WOODMANSEE *v.* FRANK LYON COMPANY.

5-328                                    265 S. W. 2d 521

Opinion delivered March 1, 1954.

[Rehearing denied March 29, 1954.]

*Wright, Harrison, Lindsey & Upton,* for appellant.

*Goodwin & Riffel,* for appellee.

WARD, J. Appellant, Richard E. Woodmansee, has appealed from a decision of the Workmen's Compensation Commission, affirmed by the circuit court, disallowing compensation under the Arkansas Workmen's Compensation laws for an injury which he received while on a duck hunting trip, which injury, appellant contends, arose out of and was in the scope of his employment.

Appellant is the vice president of the Frank Lyon Company, a corporation, and since 1943 has been the manager of its furniture department. Although the Aetna Casualty and Surety Company was made a party defendant, the Frank Lyon Company was the principal defendant and for the purpose of this opinion we will refer to it as the sole appellee.

Appellant, as manager, had five furniture salesmen working under him, and pursuant to a custom of the Company, he and the five salesmen held a meeting every Saturday morning in the Company's office at Little Rock. At these meetings problems regarding sales in the several sales territories were discussed and worked out. The salesmen were required to attend these regular Saturday morning sales meetings. From the record it appears that in 1950, prior to the incident involved here, the Frank Lyon Company bought and now owns a tract of land in Prairie County which it uses for the purpose of hunting ducks. The record does not disclose that the duck hunting land was purchased primarily for the Company's employees.

Sometime during November, 1951, a duck hunt for the salesmen was proposed in lieu of one of the regular Saturday morning sales meetings. It is not clear whether appellant or the president of the Company originated this proposal but at any rate it was made with the consent of all concerned. O. A. Mallett, a vice president, said appellant first mentioned the hunt and appellant says he thinks Mr. Lyon did, although he was not positive. In all events appellant brought the matter up in one of the meetings and Saturday, December

1, 1951, was selected by all present as a convenient date for the hunt. While, as above stated, salesmen were required to attend the regular Saturday morning sales meetings yet it seems to be agreed that no salesman's job would have been materially affected if he had declined to go on the duck hunt. It is not seriously denied by anyone that such an outing by the salesmen would have some tendency to build up their morale.

Just before leaving one of the salesmen decided that he could not make the trip because of illness, but appellant and the other four salesmen went in cars belonging to appellant and to Mr. O. A. Mallett. While appellant was engaged in hunting ducks he stumbled and fell, causing, as he contends, a serious injury to his back. There was testimony to the effect that appellant had suffered a back ailment for some years previously, but the cause and extent of his injuries are not points with which we are here concerned. Appellant's claim was disallowed by the Commission solely on the ground that his injury did not arise out of and in the course of his employment.

While many cases from the Workmen's Compensation Commission have reached this court, many of which involved an interpretation of the phrase "out of and in the course of employment," yet this court has not had occasion to develop rules in this regard applying to injuries received by employees while engaged in recreational activities in some way related to their employment. Many pronouncements in this connection have been made however by text writers and in opinions by courts of other jurisdictions. It is in order therefore to examine these authorities.

Schneider's Workmen's Compensation, Permanent Edition, Vol. 6, in dealing with recreations sponsored by an employer, lays down what seems to be the general rule:

" 'Generally, injuries suffered by an employee while watching, participating in, or going to or coming from recreational activities sponsored in whole or in part

by the employer, are not compensable, since such injuries are usually sustained while the employee is not performing any duty for which he had been either expressly or impliedly employed. In other words the injuries cannot ordinarily be said to have resulted from an accident arising out of and in the course of the employment.' ''

Based on this general rule which denies compensation in recreational cases the authorities recognize certain exceptions, or, it might be more appropriate to say, they call attention to certain guide posts which point either to compensability or non-compensability. Hereafter we set out some of these exceptions or guide posts.

1. *Where employees are required to participate.*

(a) In the same treatise by Schneider it is stated:

'' 'A distinction is also made where the injured employee was either required to participate in certain recreations, or from the evidence it could reasonably be inferred that the injured employee's employment contemplated his participation.' ''

(b) In Larson's book on Workmen's Compensation laws at page 328 it is recognized that compensability is indicated in recreational or social activities where:

'' 'The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment.' ''

(c) In the case of *State Young Men's Christian Association* v. *Industrial Commission*, 235 Wis. 161, 292 N. W. 324, it was held that a medical student who was employed by the Y.M.C.A. as a counselor at its summer camp with the privilege of using the camp's recreational facilities, and while doing so was injured, could not recover because he was not engaged in anything required of him by his employer.

(d)   In *Wilson* v. *General Motors Corporation,* 298 N. Y. 468, 84 N. E. 2d .781, in denying compensation to a salaried foreman who was injured while participating in the activities of the baseball team equipped by his employer the court gave one of its reasons in this language:

"  'Personal activities of employees, unrelated to the employment, remote from the place of work and its risk, not compelled or controlled by the employer, yielding it neither advantage nor benefit, are not within the compass of the Workmen's Compensation Laws.' "

(e)   Compensation was allowed by the Superior Court of Pennsylvania in the case of *Miller* v. *Keystone Appliances, Inc., et al.,* 133 Pa. Super. 354, 2 A. 2d 508. Miller, a salesman on a commission basis, was injured while attending a picnic given by his employer.  The Commission allowed compensation, the circuit court reversed the Commission and the Superior Court reinstated the findings of the Commission.  The test to be applied and the basis of the court's decision is contained in this excerpt from the opinion:

"The test to be applied is: Did he go upon this mission voluntarily or because of the request of his superintendent?  The referee advises that he went not only at the request of the superintendent, but in pursuance of the policy which the company followed with all its employees.  He was therefore practically under orders and in the performance of his duty when he was injured."

2.   *Regular participation or participation incidental to employment.*  Regular participation in recreational activities with the consent of the employer has been recognized as an indication that such activities are in the course of employment.

(a)   Schneider's work, *supra,* expresses it as an exception to the general rule:

"  'A like distinction is made where the recreation causing the injury has, by its consistent regularity, such

as games played on the employer's premises with the knowledge and acquiescence of the employer during noon hours, become a part of the daily life and routine of the employee.' "

(b) Professor Larson, *supra,* expresses the same view as to such injury when:

" 'They occur on the premises during a lunch or recreational period as a regular incident of the employment.' "

(c) In the case of *Industrial Commission of Colorado* v. *Murphy,* 102 Colo. 59, 76 P. 2d 741, 115 A. L. R. 990, in denying compensation in a recreational case the court pointed out that the games played by the company team were "new, intermittent and casual," indicating that the holding might be otherwise if the games were "long established and part of the daily life and routine."

(d) The rule announced above was recognized in the case of *Kelly* v. *Hackensack Water Company,* 10 N. J. Super. 528, 77 A. 2d 467, in holding that an employee's injury received while attending a picnic sponsored by his employer arose out of the scope of his employment, the court said:

"The employer's outing had been an annual event since 1932, except for one year (1948). Following its abandonment, there was a protest by the employees and it was reinstated in 1949. The protest included a claim that the outing was one of the 'benefits' which respondent had guaranteed to continue by the terms of the employment . . .

"Employees attending the outing were paid their regular days wages. In the event of non-attendance the employee was required to work at his regular. employment."

(e) Compensation was allowed in the case of *Pacific Indemnity Company* v. *Industrial Accident Commission,* 26 Cal. 2d 509, 159 P. 2d 625, where two minor boys, employed as grape pickers, were drowned while

bathing in a reservoir provided for them by their employer. In reaching its conclusion the court pointed out that it had been stipulated that the accommodations referred to "were furnished by the employer to the employee free as an incident of their employment." It was also pointed out by the court that it was a direct benefit to the employer to have the berry pickers keep themselves in a sanitary condition.

3. *Where recreation facilities are maintained by an employer for his own interest and not merely because of altruistic motives.* Whether regarded as an exception to the general rule against compensability or as a guide post pointing to compensability it is recognized that one of the major considerations in this class of cases is to determine from all the facts and circumstances whether the recreational activity is sponsored by the employer principally with the hope that it will result in more business and profits to him or whether the activity is provided primarily with altruistic motives. This rule, sometimes difficult of application, has been repeatedly recognized.

(a) In Schneider's work, *supra,* we find:

" 'A distinction is made, however, in those cases where the recreation which caused the injury, either directly or indirectly, was sponsored by the employer as a matter of business and not because of altruistic motives. That is, the employer exercised control or domination over the recreation for the purpose of developing better service and greater efficiency among the employees, thereby reaping a direct business benefit from the recreation sponsored.' "

Schneider then combines two of the exceptions mentioned above and concludes that an injury is compensable if:

" '. . . from a consideration of all the facts and circumstances, a rational mind can trace the risk thereof to an act required or contemplated by the employment for the benefit of the employer directly or indirectly.' "

(b)   Professor Larson in his work finds an indication of compensability if:

" 'The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.' "

(c)   In his work on Workmen's Compensation, Vol. 1, Page 233, Campbell, considering a ball club sponsored by an employer, states:

" 'The activity, however, comes under the Act where, in addition to defraying the expenses, the employer gets advertising from the participation of the team.   The same rule applies if any interest of the employer is thereby served.' "

(d)   This question of benefit to the employer was considered in the case of *Clark* v. *Chrysler Corporation*, 276 Mich. 24, 267 N. W. 589.   It appears that the Chrysler Corporation had instructed all of its plants to install and equip a gymnasium to afford an opportunity to its employees, on a voluntary basis, to develop and build up their bodies.   While engaged in playing basketball one of the employees was injured.   The claim was rejected by the court which said:

" 'The employer provided a place for recreation of employees and left the method and means of enjoyment to the will of each individual.   It may be true that the benefit derived by a user of the place not only tended to improve him physically but, as well, to create a more friendly relation between employer and employee, but such physical betterment and emotional result, while desirable, do not attach to the contract of employment.' "

(e)   Compensation was allowed in the case of *Piusinski* v. *Transit Valley Country Club*, 283 N. Y. 674, 28 N. E. 2d 401, where a caddy was injured while playing a practice game of golf with other caddies at a country club.   The conclusion there reached appears to be based on the facts that the game was being played under the supervision of a caddy master and that the activity

would result in making the caddies more proficient as such.

The same result, based on similar reasons, · was reached in the case of *Fagen* v. *Albany Evening Union Company*, 261 App. Div. 861, 24 NYS 2d 779.

Having in mind these rules and pronouncements regarding the relation of recreational activities to the course of employment, the question presented to us on this appeal is: Do the facts and circumstances of this case show, as a matter of law, that appellant's injury arose out of and in the course of his employment? Or, to the same effect, the question may be more specifically stated: Do the facts and circumstances shown by the record reveal a lack of substantial evidence to support the Commission's finding that appellant's injury did not arise out of and in the course of his employment? After careful consideration we conclude that both questions must be answered in the negative.

The question was purposely stated in the alternative above because it is inescapable that the Commission, in applying the facts [undisputed] to the rules, must use some degree of discretion and judgment in this kind of a case. This was recognized in the *Muler* case, *supra*, where the court said:

"Whether deceased was in the course of his employment when he was injured is a question of law . . . But in determining that question we must bear in mind the liberal construction that this term has received in the courts, and the exclusive function of the compensation authorities to find facts, whether from direct or circumstantial evidence, and the inferences therefrom."

Portions of the testimony in this case can be interpreted as indicating compensability while other portions, and in some instances the same testimony, can be interpreted as indicating non-compensability, but we think the latter view prevails.

(a) Even though it was desirable on the part of appellant and the company that the salesmen should

all go on the duck hunt, yet it can not be said that they were required to go, and it is not contended that the company required appellant to go. The Commission was justified in finding that appellant himself proposed the trip, and it also appears that all of the salesmen were enthusiastically in favor of it.

(b) So far as the record reflects this is the first time that appellant and the salesmen had ever hunted ducks on the company's land. It can not be argued therefore that this recreational activity was a part of their employment or that it was a plan or system of recreation to be habitually indulged in.

(c) While it is reasonable to suppose that the company might expect some indirect and intangible benefit from the fact that this kind of recreation might promote good fellowship and enhance the morale of its employees, still we are unable to say that this was the motive of the company in permitting its employees to go on this particular duck hunting trip. The Commission was justified we think in concluding that appellant and the salesmen voluntarily chose this hunting trip in lieu of the sales meeting that would ordinarily have been held on that day.

In view of what has been said we affirm the judgment of the trial court which in turn affirmed the findings of the Commission.

ROBINSON, J., dissenting. It can be seen from the majority opinion that this is a close case; in fact the majority says: ''Portions of the testimony in this case can be interpreted as indicating compensability while other portions, and in some instances the same testimony, can be interpreted as indicating non-compensability; but we think the latter view prevails.''

In circumstances where the question is so close, I think the employee should be given the benefit of the doubt. We have held many times that the women's Compensation Law should be broadly and liberally construed, and that doubtful cases should be resolved in favor of the claimant. *Scobey, Adm. v. Southern Lumber Com-*

*pany,* 218 Ark. 671, 238 S. W. 2d 640, 243 S. W. 2d 754; *Triebsch* v. *Athletic Mining & Smelting Co.,* 218 Ark. 379, 237 S. W. 2d 26; *Hunter* v. *Summerville,* 205 Ark. 463, 169 S. W. 2d 579; *Elm Springs Canning Co.* v. *Sullins,* 207 Ark. 257, 180 S. W. 2d 113; *Nolen* v. *Wortz Biscuit Co.,* 210 Ark. 446, 196 S. W. 2d 899; and *Batesville White Lime Co.* v. *Bell,* 212 Ark. 23, 205 S. W. 2d 31.

Mr. Justice MILLWEE joins in this dissent.