WEST TREE SERVICE, IN'C. ᴇᴛ ᴀʟ *v*. CᴀRʟ D. HOPPER, Eᴍᴘʟᴏʏᴇᴇ

5-4477                                                                425 S. W. 2d 300

Opinion delivered March 18, 1968

*Wright, Lindsey & Jennings,* for appellants.

*Pearson & Pearson* and *Fitton & Meadows,* for appellee.

Cᴀʀʟᴇᴛᴏɴ Hᴀʀʀɪs, C'hief Justice. This is a Workmen's 'Compensation case. Carl D. Hopper, appellee herein, was, on December 22, 1965, an employee of West Tree Service, Inc., and was working with a tree-trimming crew near Bentonville, Arkansas, engaged in trimming trees and brush along a telephone company right-of-way. The crew consisted of five persons, including claimant and the foreman, Lee Perry. After eating lunch together, and before returning to work, Perry took a .22 rifle from the truck the men were using in performing the work, and fired it at a tin can; the rifle was then handed to J. C. Jones, an employee, who also fired it, and handed it to appellee. When Hopper fired the rifle, the breech lock slipped, and a shell exploded, causing injury to, and eventual loss of sight of appel-

lee's right eye. Hopper filed a claim for compensation, which was denied by the referee. This finding was appealed to the full commission, which affirmed the decision of the referee, finding that the accident did not arise out of appellee's employment. On appeal to the Benton County Circuit Court, the commission was reversed, the court finding that the injury did arise out of the employment. From this judgment, appellants, West Tree Service and Tri-State Insurance Company, bring this appeal. For reversal, it is simply asserted that the commission's holding that the injury did not arise out of the employment is sustained by substantial evidence, and the Circuit Court, therefore, erred in reversing that finding.

On the aforementioned date, the crew had returned to the job site after having lunch, and Perry took the rifle from the truck (where he had placed it two or three days before) for the purpose of aligning the sights, if this adjustment were needed. He fired the rifle one time. According to Perry, Hopper asked if the others could shoot, and the foreman consented for this to be done. As previously stated, he passed the rifle to one of the crewmen, Jones, who fired it, and Jones then handed it to Hopper, who, upon firing it, received the injury. Hopper denied that he had asked to shoot the rifle, stating that he neither said that he wanted to shoot it or didn't want to shoot it; however, admittedly, he was not directed to fire it, and he agreed that he could have turned down the invitation to shoot if he had so desired. Most of the workmen testified that the suggestion for firing the gun came from Perry, and they said he gave each man a shell to be used, but it is apparent from the evidence given by the workers that the matter of shooting the rifle was a voluntary act on the part of these employees; i. e., they did not feel that they were being ordered, or compelled, to discharge the firearm. The crew ordinarily took approximately thirty minutes for lunch; on this particular day, that time had been exceeded, but the foreman had not ordered the men

back to work. The rifle was the personal property of Perry, and there is no contention by appellee that it had previously been used in any manner by the members of the crew, either for recreation, or while engaged in trimming trees and bushes along the telephone company right-of-way.

In reversing the commission, the trial court held:

"The Court further finds that the injury arose out of the regular course of employment in that it would only be natural to expect young men working in the out-of-doors trimming trees to engage in normal recreation during rest periods, which are common and incident to out-of-doors living, including the firing of a .22 rifle.

"The Court further finds that the rifle belonged to the foreman of the claimant and that claimant was encouraged to participate in this form of rest, recreation and relaxation during the rest period and that such rest, recreation and relaxation during the rest period was of benefit to the employer."

We do not agree. There is nothing in the record to suggest that the company should have expected these employees to shoot at tin cans with a .22 rifle during either a work period or during a lunch break. It might also be pointed out that the evidence is conclusive that this activity had never been engaged in previously. Appellee cites the case of *Southern Cotton Oil Division* v. *Childress*, 237 Ark. 909, 377 S. W. 2d 167, which was a case involving the death of an employee while engaging in "horseplay" with a fellow employee. Strictly speaking, this is not a horseplay case, but if it be so considered, there are important distinctions between the two. In the first place, the work had commenced when the horseplay started between Childress and the other employee. In the next place, the instrument that caused the fatal injury was an air hose which was used in the employment. Still further, these employees had previously, on five or six occasions, engaged in these friend-

ly "scuffles." It is at once apparent that these circumstances, pertinent to recovery in the *Childress* case, are not here present, and it might also be added that no fellow employee caused Hopper to receive the injury since the firing of the weapon was a voluntary act on his part.

Appellee seems to depend, in large measure, upon the fact that the foreman was present, participating in, perhaps encouraging, but, at least, acquiescing in the act that precipitated this claim. Let it first be said that we attach no more significance to the fact that the foreman owned the rifle, and first commenced using it, than if it had been one of the other employees. Certainly, the firing of the rifle was not connected in any manner with the work of the crew or the foreman, nor did it in any manner advance the interests, or inure to the benefit, of the West Tree Service Company. Of course, an employer is charged with the knowledge of his representative *concerning matters within the scope of employment* of the employer's representative. In *Texarkana Telephone Company* v. *Pemberton,* 86 Ark. 329, 111 S. W. 257, this court said:

"Notice to the wire chief (he being a vice-principal) of the dangerous condition of the wires [the telephone lines] was notice to the company."

As stated in 35 Am. Jur., Master and Servant, § 364, p. 789:

"* * * The employer, also, is charged with the knowledge of such representative concerning the condition of the employer's plant, his appliances, etc., at least so far as that knowledge was gained in the course of employment and the representative is not acting adversely in such way as to rebut any presumption of divulgence to the employer."

However, the decisive and controlling point in this litigation is how we answer the question, "Did Hopper's

injury arise out of his employment?" The answer is definitely, "No." Numerous cases are cited by appellants involving injuries to employees sustained from firearms, and where claims for compensation were filed. In these cases, benefits were denied because of the fact that the accident bore no relationship whatever to the nature of the employment. In the Mississippi case of *Earnest* v. *Interstate Life and Accident Insurance Company,* 119 So. 2d 782, the appellant was employed by a life and accident insurance company to solicit and sell insurance policies. Earnest drove to the home of a prospect for the purpose of taking him to a doctor for a medical examination (pursuant to selling a policy). The prospect requested appellant to wait until he could shave. While waiting, appellant observed the prospect's son, with whom he had previously discussed a policy of insurance, working near the barn. He walked a short distance toward the son, then returned to his car, picked up his shotgun, and lifted the gun from the auto, for the admitted purpose of shooting a crow. After taking about four steps toward the son, the gun accidently discharged, and struck Earnest in the left ankle, as a result of which the lower part of the leg had to be amputated. The Workmen's Compensation Commission denied coverage, and on appeal, the Mississippi Supreme Court affirmed, stating:

"An injury arises out of the employment when there is a causal connection between it and the job. 58 Am. Jur., Workmen's Compensation, Sec. 211; *Brookhaven Steam Laundry* v. *Watts,* 1952, 214 Miss. 569, 55 So. 2d 381, 59 So. 2d 294. Claimant was not required to carry the gun. Its possession by him when it discharged was not connected with his employment. The injury did not arise out of the employment. * * *

"Earnest admitted he carried the gun for his own personal pleasure, and it had no connection with his job. The risk was unrelated to the employment* * *."

In the instant litigation, the aligning of the sights and firing of the rifle were entirely alien to the employment.

Our own case of *Woodmansee* v. *Frank Lyon Company*, 223 Ark. 222, 265 S. W. 2d 521, is somewhat pertinent to the case at hand. There, Woodmansee, a high-ranking employee, and some furniture salesmen for the company went on a duck hunt, and Woodmansee was injured. The background is set out in the court's opinion:

"Sometime during November, 1951, a duck hunt for the salesmen was proposed in lieu of one of the regular Saturday morning sales meetings. It is not clear whether appellant or the president of the Company originated this proposal but at any rate it was made with the consent of all concerned. O. A. Mallett, a vice president, said appellant first mentioned the hunt and appellant says he thinks Mr. Lyon did, although he was not positive. In all events appellant brought the matter up in one of the meetings and Saturday, December 1, 1951, was selected by all present as a convenient date for the hunt. While, as above stated, salesmen were required to attend the regular Saturday morning sales meetings yet it seems to be agreed that no salesman's job would have been materially affected if he had declined to go on the duck hunt. It is not seriously denied by anyone that such an outing by the salesmen would have some tendency to build up their morale.

"Just before leaving one of the salesmen decided that he could not make the trip because of illness, but appellant and the other four salesmen went in cars belonging to appellant and to Mr. O. A. Mallett. While appellant was engaged in hunting ducks he stumbled and fell, causing, as he contends, a serious injury to his back."

After a rather lengthy discussion, and the citing of numerous decisions, this court said:

"(a) Even though it was desirable on the part of appellant and the company that the salesmen should all go on the duck hunt, yet it can not be said that they were required to go, and it is not contended that the company required appellant to go. The Commission was justified in finding that appellant himself proposed the trip, and it also appears that all of the salesmen were enthusiastically in favor of it.

"(b) So far as the record reflects this is the first time that appellant and the salesmen had ever hunted ducks on the company's land. It can not be argued therefore that this recreational activity was a part of their employment or that it was a plan or system of recreation to be habitually indulged in. * * *

"In view of what has been said we affirm the judgment of the trial court which in turn affirmed the findings of the Commission."

In the case before us, to paraphrase *Woodmansee,* it is undisputed that Hopper was not required to fire the rifle, and, in fact, this is not even contended. The commission was justified in finding that this was a voluntary act on his part. The record reflects that this is the first time that this activity was engaged in, and it cannot be successfully argued that it was a part of the employment or that it was a plan or system of recreation to be consistently indulged in.

It is evident, from what has been said, that we are of the view that the court erred in reversing the commission.

Accordingly, the judgment of the Benton County Circuit Court is reversed, and the cause is remanded to that court with directions to reinstate the order of the commission.