Arthur Boutiette, Director State Department for Social Security Administration Disability Determination 701 Pulaski Street Little Rock, AR 72201
Dear Mr. Boutiette:
I am writing in response to your request for my opinion on four questions arising from the following facts:
 Arkansas Disability Determination for Social Security Administration (DDSSA) is a 100% federally funded state agency subject to the general appropriation laws of the State of Arkansas. Our agency desires to construct, within our existing leased premises, a wellness center for the exclusive use of our employees. All equipment for the center will be donated and our employees will be prohibited from using the facilities during the time they are on duty. Admission to the center will be strictly controlled and all employees will be required to sign an extensive release document purporting to exculpate the landlord, the State, the Agency, and its management from any liability arising from the use or misuse of the equipment and facility. Further, the Agency will cause the equipment to be inspected periodically.
Against this backdrop, you have posed the following questions:
 1. Would any agency employee injured in this facility (but while not performing official agency functions/duties) be covered under the Arkansas Workers' Compensation Act?
 2. If an employee thus injured is not eligible for Workers' Compensation benefits, would the employee have a valid claim before the state Claims Commission provided the employee's private health care insurance denied coverage?
 3. Would allowing such use of state leased premises be within the scope of the Agency Director's official duties as an Agent of the State?
 4. If an injured employee is unable to secure reimbursement from either Workers' Compensation, private insurance, or the State Claims Commission, could that employee pursue a remedy against the Agency Director, personally, for allowing a State office facility to be used for a non-state related function, e.g. exceeding the scope of his authority?
RESPONSE
With respect to your first question, I believe the Workers' Compensation Law clearly applies to the DDSSA's employees. At issue is the factual question whether the Workers' Compensation Commission would deem an injury sustained at the proposed wellness center compensable as having arisen "out of and in the course of employment or service." A.C.A. §19-10-402(a)(1). If faced with this question, the commission might well deny coverage based upon A.C.A. § 11-9-102(4)(B)(ii), which excludes from the category of compensable injuries any harm suffered during recreational activities. With respect to your second question, if the employee were deemed ineligible for workers' compensation benefits, I believe he could seek recovery before the Claims Commission. The commission might deny coverage pursuant to A.C.A. § 18-11-301 et seq. — a subchapter of the Code that provides limited protection from liability to owners and lessees of property used by the public for recreation and exercise purposes. However, there is some question whether this subchapter was intended to cover facilities like an employer-sponsored wellness center. Should this subchapter not apply, in order to assess liability, the commission would need to determine based upon the facts whether the employee was an "invitee," a "licensee" or neither at the time of the injury. In my opinion, the commission might well be influenced in making this determination by the substance of the "extensive release" referenced in your request. Finally, notwithstanding the contrary suggestion in you question, if private insurance premiums were paid by or on behalf of the employee, I do not believe the state would be absolved of liability to the extent of the insurance coverage.See A.C.A. § 19-10-303. With respect to your third question, I am unable and unauthorized to make the factual determination whether the federal government has approved the Director's proposed commitment of federal funds to the establishment of a wellness center for the use of DDSSA employees. With respect to your fourth question, the Director is afforded limited immunity from tort liability pursuant to A.C.A. § 19-10-305(a). Although only a finder of fact could determine whether that immunity applied under the facts of a particular claim, I consider it unlikely that merely authorizing the creation of a wellness center would constitute "malicious" conduct of the sort required to establish liability.
Question 1: Would any agency employee injured in this facility (but whilenot performing official agency functions/duties) be covered under theArkansas Workers' Compensation Act?
Sections 21-5-601 through -610 of the Arkansas Code (Repl. 1996 Supp. 2001), the Public Employee Workers' Compensation Act (the "Act"), provides for the application to "public employees" of the general Workers' Compensation Law, A.C.A. §§ 11-9-101 through 1001 (Repl. 1996 Supp. 2001). Subsection 21-5-602(1) of the Code states the legislative purpose of the Act as being to "[p]rovide workers' compensation coverage through state funds for all public employees, as defined in this subchapter, who are not otherwise covered under a workers' compensation liability insurance policy written and issued by a private workers' compensation liability carrier."
Included among the statutory definition of "public employee" under the Act is "[a]ny officer or employee of any state agency . . . receiving an appropriation for regular salaries, extra help, or authorized overtime payable from funds deposited in the State Treasury. . . ." Among your responsibilities as Director of the DDSSA are the following:
 To accept and deposit in the State Treasury any funds from whatever source received and to withdraw therefrom such funds as may be required to carry out its functions, powers, and duties and, with respect thereto, to comply fully with the General Accounting and Budgetary Procedures Law, 19-4-101 et seq., and the Arkansas Purchasing Law, 19-11-201 et seq., and, where more restrictive, with the terms of any agreement entered into with the secretary in relation to the use of any funds made available to the department by the United States of America, or by any department or agency thereof.
A.C.A. § 20-76-303(1). As this statute reflects, and as you acknowledge in your request, despite the fact that DDSSA is "100% federally funded," the agency's operating budget is funded through the state treasury in accordance with the Arkansas appropriations process. Accordingly, I believe your employees are covered by the Act.
Under A.C.A. § 19-10-402(a)(1), the Workers' Compensation Commission is charged with exclusive jurisdiction to resolve all claims against the state and its agencies "for personal injuries and deaths of employees and officers of the State of Arkansas and its agencies, departments, and institutions arising out of and in the course of employment or service." (Emphasis added.) Subsection (2)(A) of this statute echoes this standard, providing:
 Awards for these injuries and deaths shall be made by the commission in the same amounts and on the same terms and conditions as if such injuries and deaths had arisen out of and in the course of private employment covered by the Workers' Compensation Act, 11-9-101 et seq.
(Emphasis added.) Assuming, then, that one of your employees filed a claim for injuries incurred in the course of using the wellness center, the Workers' Compensation Commission would undertake to determine whether the injuries arose out of and in the course of employment.
In making this determination, the commission may well feel no need to look beyond the provisions of A.C.A. § 11-9-102(4)(B)(ii), which excludes from the category of "compensable injury" any "[i]njury incurred while engaging in or performing or as the result of engaging in or performing any recreational or social activities for the employee's personal pleasure." However, I cannot unequivocally opine that this statute would bar liability under the circumstances you have recited. The statute does not specify whether it would apply if the employer were to realize some indirect benefit such as improved employee health from the activity. Moreover, a factual issue exists regarding whether the activities undertaken at a "wellness center" should be characterized as "recreational." Nevertheless, I suspect the commission would conclude that they were and deny coverage.
If the commission were to conclude for some reason that this statute did not apply, it would look to common-law precedents for guidance. InChilcote v. Blass, Riddick Chilcote, 2 Ark. App. 297, 620 S.W.2d 953
(1981), the court affirmed the commission's two-to-one vote denying benefits to a claimant who had suffered an injury while playing softball for a team sponsored by the private firm that employed him. After noting that this was "the first company-sponsored team injury claim to be considered by an appellate court in Arkansas," id. at 298, the court acknowledged various factors that the commission had considered in reaching its decision:
 The parties and the commission have devoted considerable attention to 1A Larson, Workmen's Compensation Law 22.24 (1979), where it is said that four categories of tests have figured in company-sponsored team cases. Those tests as summarized in the commission's opinion are as follows:
(1) Whether the activities occur on the premises during working hours;
(2) The degree of employer initiative;
(3) The furnishing of money or equipment by the employer;
(4) The benefit to the employer from the activity.
Id. at 298-99. Without embracing these factors as dispositive, the court offered the following summary of the law:
 [T]hese tests suggested by Larson are only factors involved in making the factual determination of whether the injury arose out of and in the course of employment. The commission has not, as suggested by appellant, failed to apply the applicable law to its own findings of fact. Larson's tests are not "law." He is simply presenting an overall view of the results reached in reported cases with this type claim.
 As the commission pointed out, injuries received during recreational activities have been considered by the Arkansas Supreme Court before. Larson, in earlier editions, has been cited by the court in Woodmansee v. Frank Lyon Co., 223 Ark. 222, 265 S.W.2d 521 (1954), where a highranking employee of the company was injured while on a duck hunt with some company salesmen. Woodmansee was discussed in West Tree Service v. Hopper, 244 Ark. 348, 425 S.W.2d 300 (1968), where an employee sustained an injury on the employer's premises, during the lunch hour, when firing a rifle belonging to his foreman. Larson and Woodmansee were both discussed in Wilson v. United Auto Workers, 246 Ark. 1158, 441 S.W.2d 475 (1969), where the employee died while swimming in the pool at a motel where he was required to stay while on his job.
 In each of those cases, the Supreme Court held that a factual determination was involved and affirmed the commission's decision. The case at bar presents a close question and the evidence is certainly sufficient to support a finding for the appellant, but the commission has found otherwise.
In West, the court held that that an injury is compensable when a causal connection exists between it and the job. 244 Ark. at 352; accord Arnoldv. Tyson Foods, Inc., 64 Ark. App. 245, 248 (1998). This principle may account for the fact that the commission denied compensation in each of the cases discussed in the immediately preceding excerpt from Chilcote.
Question 2: If an employee thus injured is not eligible for Workers'Compensation benefits, would the employee have a valid claim before theState Claims Commission provided the employee's private health careinsurance denied coverage?
The existence and functioning of the Arkansas State Claims Commission is authorized pursuant to A.C.A. § 19-10-201 et seq. The commission is an arm of the legislature charged with determining the state's just debts.See Hanley v. Arkansas State Claims Commission, 333 Ark. 159, 166,970 S.W.2d 198 (1998); see also Note, Bly v. Young, Beaulieu v. Gray, andCarter v. Bush: The Arkansas State Employee Immunity Trilogy, 41 Ark. L.R. 893 (1988). Its creation by the legislature marks a waiver of what would otherwise be the state's sovereign immunity from suit as guaranteed by Ark. Const. art. 5, § 20. See State v. Goss, 344 Ark. 523, 527.42 S.W.3d 440 (2001) ("This court has recognized only two ways in which a claim of sovereign immunity may be surmounted: (1) where the state is the moving party seeking specific relief; and (2) where an act of the legislature has created a specific waiver of immunity."). With certain exceptions, A.C.A. § 19-10-204, as amended by Act 1625 of 2001, invests the commission with exclusive jurisdiction over all claims against the state and its agencies. As suggested in my response to your previous question, among the exceptions are claims arising under the Workers' Compensation Law. A.C.A. § 19-10-204(b). Assuming, then, that the Workers' Compensation Law did not apply — i.e., that an injury could not be deemed to have arisen out of and in the course of employment[1] — the commission would be faced with the question whether the DDSSA was subject to premises liability for injuries suffered by the patrons of its wellness center.
Before reviewing the standards that might possibly apply in assessing the state's potential liability, I should address your apparent assumption that the DDSSA would be automatically entitled to a credit for any benefits the injured employee realized from private health insurance. The law on this matter is set forth at A.C.A. § 19-10-303 (Repl. 1998), which provides:
 (a) If the Arkansas State Claims Commission awards damages to a claimant who has received benefits under any policy of insurance, the premium of which has not been paid by or on behalf of the claimant, the commission shall reduce its award by the amount of insurance benefits received by the claimant.
 (b) The commission shall not reduce awards for damages to a claimant who has received benefits under a policy of insurance, the premium of which has been paid by or on behalf of the claimant.
This statute constitutes a legislative modification of the common-law "collateral source rule," which the Arkansas Supreme Court has recently summarized as follows:
 This Court has defined the "collateral source rule" as a "general rule that `recoveries from collateral sources do not redound to the benefit of a tortfeasor, even though double recovery for the same damage by the injured party may result.'" Bell v. Estate of Bell, 318 Ark. 483, 490, 885 S.W.2d 877, 880 (1994) (quoting Green Forest Pub. Schools v. Herrington, 287 Ark. 43, 49, 696 S.W.2d 714, 718 (1985) (quoting Amos, Adm'x v. Stroud Salmon, 252 Ark. 1100, 482 S.W.2d 592 (1972)).
Douglas v. Adams Trucking Co., 345 Ark. 203, 212, 46 S.W.3d 512 (2001). Despite your apparent belief to the contrary, A.C.A. § 19-10-303 clearly dictates that the collateral source rule will apply to allow a successful plaintiff before the Claims Commission to recover all of his or her damages without any reduction for insurance benefits received so long as the insurance premiums have been paid "by or on behalf of the claimant."
With respect to the issue of liability, I believe the DDSSA might be insulated from potential liability pursuant to A.C.A. § 18-11-302 etseq., which significantly limits an owner's liability for injuries sustained by a member of the public engaged without charge in recreational activities on his property. The statute expressly defines the term "owner" as including a "lessee," A.C.A. § 18-11-302(2) (Supp. 2001), and it includes within the category of "recreational purpose" "activity undertaken for exercise, education, relaxation, or pleasure on land owned by another." A.C.A. § 18-11-302(3)(N). Section 18-11-305 of the Code affords a landowner the following qualified immunity from liability to recreational users of his property:
 Except as specifically recognized by or provided in 18-11-307 [imposing liability for malicious failure to guard or warn], an owner of land who, either directly or indirectly, invites or permits without charge any person to use his property for recreational purposes does not thereby:
 (1) Extend any assurance that the lands or premises are safe for any purpose;
 (2) Confer upon the person the legal status of an invitee or licensee to whom a duty of care is owed;
 (3) Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons;
 (4) Assume responsibility for or incur liability for injury to the person or property caused by any natural or artificial condition, structure, or personal property on the land.
Although these statutes would appear to apply to activities normally conducted in a wellness center, I harbor some doubt whether the legislature intended to provide coverage to what arguably will be an employer-sponsored exercise facility. Section 18-11-301 defines the legislative purpose of the statutes as follows:
 The purpose of this subchapter is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.
I am struck by the fact that this purpose bears on property made "available to the public for recreational purposes" (emphasis added) — a condition the commission might conclude does not apply if the property is made available only to paying clients and employees. Moreover, in apparent accordance with the stated statutory purpose, the cases in which this subchapter has been applied have tended to involve natural hazards.See, e.g., Jenkins v. Arkansas Power Light Co., 140 F.3d 1161 (8th
Cir. 1998) (addressing liability for hazard posed by a lake); Roten v.United States, 850 F. Supp. 786 (W.D. Ark.) aff'd, 39 F.3d 1184 (1994) (absolving U.S. of liability for death resulting from fall off White Rock cliffs). The only case I have found in which this subchapter was mentioned as possibly applying under circumstances similar to those you recite in your request is Lively v. Libbey Memorial Physical MedicalCenter, Inc. ["Lively I"], 311 Ark. 41, 841 S.W.2d 609 (1992). The plaintiff in Lively I was an employee of Libbey Memorial Physical Medical Center ("Libbey Memorial"). She was injured after hours when her hair was sucked into the intake pipe of a whirlpool machine that Libbey Memorial permitted its employees to use free of charge on their own time.311 Ark. at 43. The Supreme Court acknowledged in passing that Libbey Memorial on appeal had invoked the subchapter at issue. However, the court declined to address the subchapter's potential application because the trial court had failed to do so below. 311 Ark. at 48.
Assuming the commission were not inclined to dispose of a claim based upon A.C.A. § 18-11-302 et seq., in order to determine what legal standard to apply, it would initially need to decide whether the plaintiff was an "invitee," a mere "licensee" or neither at the time of the injury. As the court noted in Heigle v. Miller, 332 Ark. 315, 319, 965 S.W.2d 116
(1998):
 This court has defined "invitee" as "one induced to come onto property for the business benefit of the possessor."[2] Bader v. Lawson, 320 Ark. 561, 564, 898 S.W.2d 40, 42 (1995) (citing Lively v. Libbey Memorial Physical Medicine Ctr., Inc. [Lively I], 311 Ark. 41, 841 S.W.2d 609 (1992); Kay v. Kay, 306 Ark. 322, 812 S.W.2d 685 (1991); Coleman v. United Fence Co., 282 Ark. 344, 668 S.W.2d 536 (1984)). A "licensee" is one who goes upon the premises of another with the consent of the owner for one's own purposes and not for the mutual benefit of oneself and the owner. Id. This court has declined to expand the "invitee" category beyond that of a public or business invitee to one whose presence is primarily social. See Bader, 320 Ark. 561, 898 S.W.2d 40; Tucker v. Sullivan, 307 Ark. 440, 821 S.W.2d 470 (1991).
In Young v. Paxton, 316 Ark. 655, 660, 873 S.W.2d 546 (1994), the court further observed:
 A business visitor is one who enters or remains on land for a purpose connected with the business dealings of the owner. Id. [Lively I, supra] A public invitee is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public. Id. Conversely, one who goes upon the premises of another with the consent of the owner for his own purposes and not for the mutual benefit of himself and the owner is not an invitee but a licensee. Id.
With respect to the duty of care owed an invitee, the court in Paxton
observed:
 [A]ssuming that Young was an invitee, Paxton's duty would be to use ordinary care to maintain the premises in a reasonably safe condition for him. Derrick v. Mexico Chiquito, Inc., 307 Ark. 217, 819 S.W.2d 4
(1991). That duty owed to an invitee usually is satisfied when the danger is either known or obvious to the invitee. Carton v. Missouri Pac. R.R., 303 Ark. 568, 798 S.W.2d 674 (1990); Kuykendall v. Newgent, 255 Ark. 945, 504 S.W.2d 344 (1974); Ramsey v. American Automobile Ins. Co., 234 Ark. 1031, 356 S.W.2d 236 (1962).
361 Ark. at 661-62. By contrast:
 A property owner owes a licensee the duty to refrain from causing him injury by willful or wanton conduct, and a duty to warn of hidden dangers or risks. Lively v. Libbey Memorial Physical Machine [sic] Ctr., Inc., supra [Lively I]; King v. Jackson, 302 Ark. 540, 790 S.W.2d 904 (1990). To constitute willful or wanton conduct, there must be a deliberate intention to harm or an utter indifference to, or conscious disregard of, the safety of others. Daniel Const. Co. v. Holden, 266 Ark. 43, 585 S.W.2d 6 (1979). This court has stated, however, that the duty to warn does not extend to obvious dangers or risks that the licensee should have been expected to recognize. Dorton v. Francisco, 309 Ark. 472, 833 S.W.2d 362 (1992); King v. Jackson, supra.
Paxton, 361 Ark. at 660-61.
Finally, it is conceivable that the "extensive release" you have mentioned might prompt the commission to forbear classifying an injured employee as either an invitee or a licensee. As a general proposition, I am unaware of any authority that would preclude the DDSSA from contractually absolving itself of a duty that might otherwise exist at common law. However, you should seek the advice of the DDSSA's own counsel regarding the substantive provisions of any such release.
Only a finder of fact can select and apply the appropriate standard under the circumstances you have recited. Although I suspect the commission would classify patrons of the wellness center as licensees if it undertook a common-law analysis, I am unauthorized to offer such factual speculation as a formal opinion. Moreover, notwithstanding my suspicion, I should point out that the court in Lively I reversed a summary judgment against the injured plaintiff under what I consider materially indistinguishable circumstances. The trial court granted Libbey Memorial's motion for summary judgment based on its contention that Lively was a mere licensee and that the complaint did not allege willful or wanton conduct. 311 Ark. at 44. The Supreme Court reversed and remanded the case based on the following reasoning:
 Lively contended that allowing employees to use the facilities free of charge as a fringe benefit better enabled Libbey Memorial to attract prospective employees and retain them. We cannot agree that there were no material questions of fact presented as to whether Libbey Memorial obtained a potential business benefit from Lively's use of the whirlpool baths.
Id. at 46.
In my opinion, the commission would in all likelihood need to resolve the same factual question in determining what standard to apply under the circumstances you have recited. Given the court's ruling in Lively I, I doubt the commission would be inclined to issue what amounts to the equivalent of a summary judgment under the following statute:
 The commission shall make no award for any claim which, as a matter of law, would be dismissed from a court of law or equity for reasons other than sovereign immunity. Specifically, if the facts of a given claim would cause the claim to be dismissed as a matter of law from a court of general jurisdiction, then the commission shall make no award on the claim.
A.C.A. § 19-10-204(b)(3). However, as suggested above, if the commission concludes A.C.A. § 18-11-301 et seq. apply, it might be inclined to summarily dismiss a claim pursuant to the statute just quoted.
Question 3: Would allowing such use of state leased premises be withinthe scope of the Agency Director's official duties as an Agent of theState?
The Director's powers and duties are set forth at A.C.A. § 20-76-303, consisting primarily of managing an agency that makes disability determinations pursuant to agreements negotiated with the United States Department of Health and Human Services. See also 42 U.S.C. § 421. You have indicated in your request that these contracts provide 100% of DDSSA's funding. As acknowledged at A.C.A. § 20-76-303(2) the federal government conditions the use of funds provided to the DDSSA pursuant to these agreements. In my opinion, only a finder of fact could determine whether these conditions would permit the Director to commit funds to rental and maintenance of a wellness center for employees.
Question 4: If an injured employee is unable to secure reimbursement fromeither Workers' Compensation, private insurance, or the State ClaimsCommission, could that employee pursue a remedy against the AgencyDirector, personally, for allowing a State office facility to be used fora non-state related function, e.g. exceeding the scope of his authority?
As a state employee, the Director is afforded the following limited immunity from tort liability:
 Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.
A.C.A. § 19-10-305(a). As implied in my response to your previous question, determining whether the activities of the proposed wellness center would be "non-state related" will turn on a review of the facts, including any conditions on the use of funds provided by the federal government. Moreover, although it appears highly unlikely that the mere creation of a wellness center, if unauthorized, could be classified as "malicious," this determination as well would ultimately be one of fact that I am neither authorized nor equipped to make.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] The argument that a plaintiff's exclusive remedy lies under the Workers' Compensation Law is available as a jurisdictional defense to a court action against a private employer or an action against the state before the Claims Commission. See Lively v. Libbey Memorial PhysicalMedical Center, 317 Ark. 5, 8-10, 875 S.W.2d 507 (1994) ("Lively II") (generally discussing the application of the exclusive remedy doctrine in cases that might arguably fall within the jurisdiction of the Workers' Compensation Commission).
[2] In my opinion, the term "possessor" in this quotation is sufficiently broad to include the state as lessee of the property at issue. As the court noted in Wheeler v. Phillips DevelopmentCorporation, 329 Ark. 354, 356, 947 S.W.2d 380 (1997):
 A tenant is not an invitee on her landlord's premises but has a right equal to that of the landlord to exclusive possession of the property. Glasgow v. Century Property Fund XIX, 299 Ark. 221, 772 S.W.2d 438
(1989).