Mary Husted, Adm'x, v. Mike Richards, et al

5-4770 436 S.W. 2d 103

Opinion Delivered January 20, 1969

*Hardin & Rickard* for appellant.

*McMillen, Teague, Bramhall & Davis* for appellees.

Lyle Brown, Justice.    Leonard Husted suffered fatal injuries when a remaining portion of a burned building fell on him during razing operations.    His administratrix brought this suit against the demolition contractor, Mike Richards, and his bulldozer operator, Curtis Willis.    The jury verdict favored the defend-

ants and the administratrix appeals, alleging error in the giving and refusing of four instructions.

The deceased, age 73, worked occasionally for Mike Richards. He was not employed on the day of the accident. There were three workers on the job of tearing down the two-story Desota Cafe in Benton, which had been gutted by fire. Curtis Willis was demolishing the structure and loading the trucks with the use of a bulldozer and attachments. As the debris accumulated, Willis would load it on trucks operated by Alfred Whitfield and an unidentified driver.

Mr. Husted had been on the cafe premises the day before the accident. Assisted by Mike Richards, Husted loaded some of the loose brick in his truck. The next day Husted came on the premises shortly before noon. While Willis was in the process of loading Whitfield's truck, Husted entered the building. From his position in the truck, Whitfield could see Husted using a sledge hammer and attempting to knock loose some two-by-four supports. After loading Whitfield's truck, Willis caught hold of a portion of the roof with the bucket of his loader. That entire portion of the roof fell. Some part of the falling debris pinned Mr. Husted. He made an outcry and the two workers immediately attempted rescue. Husted was dying when the employees reached him.

The administratrix contended that Leonard Husted was an invitee. The defendants insisted that he was a trespasser or at most a licensee. The trial court eliminated from the jury's consideration the question of whether Husted was an invitee. Then the court gave defendants' instruction defining licensee and treaspasser. The substance of the contentions on appeal is that the court should have submitted to the jury the question of Husted's alleged status of an invitee and should not have permitted the jury to consider Husted as a possible treaspasser. Those contentions require an analysis of

the evidence which sheds light on Husted's status while in the building.

If Husted went upon the premises by invitation, express or implied, for a purpose connected with Richards' operation, or for a purpose mutually beneficial to Husted and Richards, then Husted would have been an invitee. See AMI 1106. If Husted could have been classed as an invitee it would have to have been from three fragments of evidence: (1) He had theretofore been permitted to pick up scrap materials, such as bricks, at the jobsite; (2) when notified of the accident, Richards was said to have expressed regret that he ever consented for Husted to "get anything off the job"; and (3) Mrs. Husted testified that for his labors her husband was paid by Richards either in cash or in materials.

The fragmentary evidence we have recited was offered by the administratrix. Richards testified that on the day before the accident, when they were putting brick in Husted's truck, he instructed Husted not to return for any more brick; that Richards considered it too dangerous. The bulldozer operator testified that on the day of and shortly before the accident he had warned Mr. Husted not to go near the building. The truck driver, Whitfield, was called as a witness by the administratrix. On cross-examination he testified that he told Mr. Husted that he (the driver) would not go into the building "for a hundred dollars." He also testified that he saw Husted trying to knock out a two-by-four and yelled to him that he was going to weaken the structure.

Let us say, arguendo, that Husted had an implied invitation to pick up scrap materials around the jobsite, for which Richards would take credit as against Husted's earnings. It is inconceivable that his invitation extended to entrance inside the building at a time when it was apparent to all present that the supporting walls were being dismantled. It has been held that

when one crossed the boundaries of the invitation, "he ceased to be an invitee. His status then changes to that of a licensee or even a trespasser." *Steinberg* v. *Irwin Operating Co.,* 90 So. 2d 460 (Fla. 1956).

We cannot say the court erred in holding as a matter of law that Husted was not an invitee. We think there was ample evidence to submit the question of whether he was a trespasser.

Affirmed.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice. I respectfully dissent. The only question raised by appellant relates to the status of the deceased, Leonard Husted. No other issue is raised by the appellant affecting the standard of care measuring the duty owed by appellees to the decedent. I respectfully submit that there is evidence in the record from which inferences indicating that Husted was an invitee may reasonably be drawn. When this evidence is considered in the light most favorable to appellant and all reasonable inferences favorable to appellant drawn therefrom, there was a jury question as to the status of appellant's decedent. In considering this question, only those statements of appellees Richards and Willis adverse to them should be considered because their testimony cannot be considered as undisputed, and a jury might choose not to believe it.

The testimony showed substantially the following: Leonard Husted was a dragline and backhoe operator, and had worked in that capacity for appellee Richards, after he had partially retired and qualified for Social Security benefits. Sometimes he worked a week at a time and sometimes two or three days a week. Richards paid him in cash but on some occasions gave him used building materials. Husted made as much as $600 a year in addition to the materials. He had worked prac-

tically all the year 1967 for Richards. Husted had told Richards sometime before Christmas that he was due $195 and owed Richards $75 for material. Richards paid Husted a total of not more than $300 during 1967.

Husted received a call from Richards on the night before his death. He was familiar with a machine belonging to Richards which had been damaged while rented to someone else. Richards asked Husted to come to his office to talk to an insurance adjuster, during the morning before his fatal injury, which he did. Although he remained there from 8:00 a.m. to 10:00 a.m. on the day of his death, the adjuster did not ask him any questions. Richards did not pay Husted anything for the time thus spent or for his expense in coming there. He had told Husted that he could take the machine and dig a ditch across a road where Richards wanted to put a pipe. Husted left Richards' office and reached the demolition site during the morning.

Richards had previously given Husted permission to go to the demolition site and get scrap lumber and materials. Husted had gathered materials there for a day or two prior to the date he was killed. This was known to Richards, who had even helped load material on Husted's truck on the day before.

After lunch on the day of fatal injury Husted came back onto the premises carrying a sledge hammer. He stood talking to appellant Curtis Willis, the loader operator, for about five minutes, while holding the sledge hammer. Willis then proceeded to a truck driven by Whitfield some 20 feet from the building, and Husted went into the building. Whitfield saw Husted trying to knock out two-by-fours, and did not know what there could have been to prevent Willis from seeing him. Whitfield did not see Husted come out of the building. During the 15-minute period Husted was in the building, he was seen throwing a two-by-four out a second-story window by one Claude Sutton, who was watching

from across the street. Willis told a police officer that he had told Husted to get down out of the building right before he ran into it.

It was certainly reasonable to infer that Richards wanted to have the services of Husted readily available and knew that permitting him to salvage building material would help to accomplish this purpose. This was certainly to the mutual benefit of the parties. It might well have been inferred that the permission to salvage these materials was compensation to Husted for the two hours spent at Richards' office or for the dragline work Richards wanted done. An inference that Willis knew that Husted had gone into the building after their post-lunch conversation would not be unreasonable. Certainly Whitfield knew that Husted was in the building.

It is not proper for us to consider testimony of either Richards or Willis in determining whether there was a limitation or termination of the invitation. We are to determine whether there was evidence from which a finding could have been made that Husted was an invitee, even though we might think there was a preponderance of contrary evidence.

I would reverse and remand for a new trial.