# DANIEL CONSTRUCTION COMPANY
## *v.* Johnnie HOLDEN

79-17                                    585 S.W. 2d 6

Opinion delivered June 18, 1979
(Division II)
[Rehearing denied September 4, 1979.]

*Laser, Sharp, Haley, Young & Huckabay*, P.A., for appellant.

*Stuart Vess* and *Bob Dawson*, for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Daniel Construction Company seeks a reversal of a judgment for damages in the amount of $38,500 in favor of appellee Johnnie Holden, based on accidental injuries suffered by Holden on the job site during construction of the Forest Heights Apartments. Appellant was the general contractor for the construction. Holden was regularly employed as a plasterer's helper by John Purnell, a plastering contractor, who, in a joint venture with Carr Plastering Company, had subcontracted the plastering work in the apartment complex. Appellant contends that the trial court erred in refusing to grant its motion for a directed verdict. We agree and reverse the judgment.

Holden's primary duties consisted of operating a mortar mixer. His work day began at 7:30 a.m. and ended at 4:00 p.m. All the plastering work was outside the building. There was testimony that some of the subcontractor's equipment was stored inside the building at the end of the day's work and that the employees of the subcontractor would sometimes go inside the building to get blocks of wood or scrap lumber to support or repair the scaffolding used in connection with the plastering. On occasion, Holden would take a change of clothing when he went to work and, at the end of the work day, change his clothes. He estimated that he did this about three times per month. He was the only one of the subcontractor's employees who changed clothes at the jobsite. The work he did caused him to get unusually dirty.

On the morning of November 6, 1973, Holden drove his wife's car to the jobsite. He was to pick up his daughter after his work day was over. He brought a change of clothing with him to the jobsite, so he could avoid getting plaster from his work clothes on the nylon automobile seat covers. When Holden's work day ended, he placed the water hose he had been using in the plaster work, inside the building in a nearby

vacant room, so it would not be run over by machines on the premises, as he customarily did. He then went to his wife's car, obtained the clean clothing he had left there and then returned to the building. He intended to go into the same room where he had placed the hose, but he heard some people talking in the building and, although he did not know whether some of them were women or not, he thought they might have been, and went into another room, which was unlighted, and began changing his clothes. As he did so, something fell from his pocket and he took a step backward. Thinking that it was his pocket knife that had dropped to the floor, he began to feel for it and fell through an open, unguarded stairwell to the concrete floor of the garage, one story below the room in which Holden was changing his clothes. As a result, Holden sustained a fracture of the clavicle and other injuries for which he underwent orthopedic surgery.

Holden brought suit against appellant, alleging that the failure of the general contractor to place barricades around the open stairwell was the proximate cause of his injury. Appellant contended that Holden was a bare licensee on the property and that it was not liable because any negligence on its part was not wilful and wanton conduct. Appellant also pleaded that Holden's own negligence was a proximate cause of his injuries and that he had assumed any risk involved. Appellant's motion for a directed verdict was denied. The principal ground for reversal urged by appellant is its contention that the evidence established that Holden was a bare licensee and that there was no substantial evidence of wilful and wanton misconduct and the denial of its motion for a directed verdict was error. We agree.

The apartment building involved consisted of four levels, the lowest of which was the garage. The stairwell was located in the northern part of the building. The dimensions of the stairwell opening were 10 feet 4-1/2 inches by 7 feet 11 inches. The distance between the door from the hallway to the stairwell and the stairwell opening itself was about 4 feet. This intervening area was floored. The only entrance to the stairwell was the door from the hall. There was no window in the stairwell.

Viewing the evidence in the light most favorable to appellee, we find no substantial evidence that appellee was a business invitee or that appellant was guilty of wilful and wanton misconduct.

This incident occurred on November 6, 1973. It was the practice of the subcontractor to let its employees quit work 15 minutes before the quitting time of 4:00 p.m. to clean up, and change clothes if they liked, by agreement with the union representing them. On the day he was injured the appellee worked until 3:50 p.m. All the other employees of the subcontractor had left. Holden testified that the room was completely dark, but that if there had been a scaffold around the opening, he wouldn't have fallen. The stairwell was on the north end of the building. The plasterers had commenced their work at the extreme north end of the building and worked toward the south. None of their work was in the stairwell.

John Purnell, who was one of the joint venturers for whom Holden was working, testified that it was customary for his employees to change clothes inside a building on which they were working on every job he had been on. He said that Holden always put the hose in a room near his work.

It was shown that OSHA regulations require that all floor openings be guarded by a toe board or cover or by railing on all exposed sides, except at entrances to stairwells. A safety consultant said that, as an alternative, the door at the entrance to the stairwell from the hall might have been barricaded.

If Holden had fallen into the stairwell in the room into which he had gone to store the hose used by him daily in the performance of his duties, there probably would have been a question for the jury to determine whether he was a bare licensee or a business invitee. There is evidence from which a jury might find that leaving the open stairwell unguarded, without taking any precautions to warn anyone who might be on the premises of the danger, constituted negligence on the part of the general contractor. Appellant concedes that employees of subcontractors are business invitees of the

general contractor while performing their work on the site of the work of the subcontractor, pursuant to the terms of the contract. But it contends, and we agree, that the employees of a subcontractor do not enjoy that status when they use a portion of the premises, or engage in activities, which are not related to the performance of their duties of their employment under the subcontract agreement.

We have said that when one crosses the boundaries of the invitation, he ceases to be an invitee and becomes either a licensee or a trespasser. *Husted* v. *Richards*, 245 Ark. 987, 436 S.W. 2d 103. This is in keeping with the general rule recognized by the authorities. It is said that one who enters a building as an invitee for a business purpose is an invitee only while he remains in a portion of the building in which he had a legitimate errand, but if he leaves a place of safety and goes to a place where his business does not require him to be, deliberately placing himself in a position where he is injured by a defective appurtenance, he acquires a less favored status. 62 Am. Jur. 2d 286, Premises Liability, § 47. It is necessary that an employee of a subcontractor, in order to recover as a business invitee of the general contractor, show that, when he was injured, he was using a part of the premises reasonably within the contemplation of the employer's contract or accepted by defendant as being so. Annot., 20 ALR 2d 868, 914. Appellee argues that appellant did receive benefits from his presence on the premises and that it was customary for him to change his clothes there during working hours.

No doubt appellant benefitted from Holden's being on the premises, generally, at or near the site of his work or in places that it might reasonably be contemplated he would go in connection with the performance of his work. Assuming that the evidence is sufficient to permit a finding, based upon Holden's infrequent use of a room for changing his clothes, that there was consent or acquiescence by appellant in that use of the premises, it is difficult to see how appellant benefitted from that practice, particularly when the change was made for Holden's own personal reasons, totally unconnected with the performance of any duty. What is more important, however, Holden was completely outside the boundaries of any invitation. He did not go into the room

where he stored the hose, but deliberately entered a room that was totally dark for the purpose of changing his clothes. It would certainly not be reasonable for appellant to contemplate that an employee of a subcontractor whose work was entirely outside the building would enter a room that was dark, not just unlighted, and not adjacent to the place the employee was working, to change his clothes. This room was not a part of the premises reasonably within the contemplation of the employer's contract or accepted by appellant as being so. Holden was no more than a licensee on the premises.

To constitute wilful or wanton conduct, there must be a course of action which shows a deliberate intention to harm or which shows utter indifference to, or conscious disregard of, the safety of others. The approved jury instruction so defines wilful or wanton conduct. See AMI, Civil, 1102. In considering the question of the duty owed to an invitee, the Arkansas Supreme Court Committee on Jury Instructions pointed out an apparent conflict in our holdings in *St. Louis-San Francisco Ry. Co.* v. *Bley*, 168 Ark. 814, 271 S.W. 455 and *Missouri Pac. R. Co.* v. *Thomas*, 197 Ark. 565, 124 S.W. 2d 820. In the former, it appears that an owner or occupier could not wilfully or wantonly injure a person whose presence was not known, even if it should have been known. In *Thomas*, it was indicated that an owner or occupier might be guilty of such conduct if he should have known that licensees were often to be found at a certain place upon the premises. The committee regarded this as the better view, and we do, too. If there had been any evidence that the general contractor knew that appellee, or the other employees of the subcontractor, were frequently about the stairwell after their work had been discontinued, there might be some basis for further inquiry. Generally speaking, however, a licensee takes the premises as he finds them, or as otherwise stated, he "takes his license with its concomitant perils." *Knight* v. *Farmers' & Merchants' Gin Co.*, 159 Ark. 423, 252 S.W. 30; *Garrett* v. *Arkansas Power & Light Co.*, 218 Ark. 575, 237 S.W. 2d 895; *Chicago, R. I. & P. Ry. Co.* v. *Russell*, 136 Ark. 365, 206 S.W. 666. In the last case cited, it was said that an open stairway in a place of darkness was a danger which the licensee must have avoided at his peril and that the owner owed no duty to a licensee to keep the stairwell lighted or to give him warning of its condition.

The only duty appellant owed Holden as a licensee was not to cause injury to him by reason of its wilful and wanton misconduct, after it knew, or should have known, of his presence in the room he entered. The evidence clearly shows that appellant was guilty of violation of certain OSHA regulations. But simply violating such regulations by failure to use the safeguards required by them is not evidence of wilful or wanton misconduct on the part of the general contractor. Since the case has been fully developed, the judgment is reversed and the cause dismissed.

We agree. HARRIS, C.J., and BYRD and HOLT, JJ.

HICKMAN, J., dissents.