W.J.B. "Sonny" AXSOM II *v.* APARTMENT HOUSE BUILDERS, INC.

88-235                                             768 S.W.2d 19

Supreme Court of Arkansas
Opinion delivered April 17, 1989
[Rehearing denied May 15, 1989.*]

---

*Holt, C.J., and Hickman, J., not participating.

*Davidson Law Firm,* by: *Charles Phillip Boyd, Jr.,* for appellant.

*Friday, Eldredge & Clark,* by: *James M. Simpson, Scott J. Lancaster* and *Hank Jackson,* for appellee.

JOHN I. PURTLE, Justice. The appellant, an employee of a subcontractor, filed suit for injuries which he sustained while on the job and which he asserted were the result of the negligence of the prime contractor. After a jury trial a verdict was returned in favor of the appellee. The appellant argues that the trial court erred in failing to give Arkansas Model Instruction (AMI) 1104 or 1106 and that the court should have instructed the jury on strict liability. The appellant failed to preserve the issue of strict liability for appellate review. We agree that AMI 1104 should have been modified and given or that AMI 1106 should have been given. The failure to give either of the requested instructions was prejudicial error.

The appellant was at the time of the events discussed herein an employee of Riverside, Inc., a subsidiary and subcontractor for Apartment House Builders, Inc., appellee. It is admitted that the general contractor occupied the premises, but a dispute arises on the question of whether he had a duty to maintain the premises in a safe condition for the employees of the subcontractor. The contract is apparently silent on responsibilities for keeping the premises in safe working order. One clause in the contract states: "The subcontractor shall at all times keep the building and premises clear of debris arising out of the operation of this subcontract." Although debris could become a factor in causing injury, it cannot be said that this clause created an express duty on the part of the subcontractor to keep the premises in a safe

working condition. It is also not disputed that the contractor and subcontractor in this case agreed to cooperate in scheduling their work in a manner so as to create as little conflict as possible between the two parties in performing their responsibilities under the contract.

The appellant was injured on July 18, 1986, while descending an unfinished metal stairway between the second and third floor of the premises under construction. He caught his foot on a metal lip on the outside rim of a pan-like step, which was to be filled with concrete, and fell from the third floor level to the second floor level, receiving a severe fracture of his right wrist. The allegation in the complaint was that the stairway was unlit, had no handrails or protective guard, and was unfinished. Subsequently the complaint was amended to allege that the incomplete stairway was a product under the Products Liability Act and that it was defective and unreasonably dangerous.

The appellant argues that the court erred in failing to present the issue of strict liability to the jury for consideration. However, the appellant did not offer instructions on this subject or, if an unsatisfactory instruction was offered, did not preserve his objection or offer another instruction. Simply put, he did not preserve his appellate rights on this issue.

From the record it appears that another subcontractor was responsible for pouring the concrete in the steps of the stairway. Although Riverside, Inc., installed the metal frame of the stairway, it was the prime contractor who had directed the stairway to be erected in the first place, and it was its responsibility to notify the other subcontractor when to pour the concrete.

The facts are not the major issue in this appeal. The responsibilities and duties between a contractor and subcontractor constitute the point at issue. After the evidence had been presented and the court was going over the instructions to be given, the appellant requested AMI 1104 and 1106. However, the court refused to give these instructions on the basis that AMI 301, as modified, would be given and that it explained the duty to exercise ordinary care sufficiently for the jury to understand the case. The appellant argued to the court that he was clearly an invitee; therefore the duty owed to him was that contained in AMI 1104. The attorney added: "If the court feels there was an

issue as to whether he was a business invitee or licensee, then AMI 1106, at the very minimum, should be given." AMI 1104 as presented to the court by the appellant's counsel stated: "In this case Sonny Axsom was a business invitee upon the premises of Apartment House Builders, Inc."

AMI 1106 was requested and it appears to have been properly drawn to frame the issues before the jury. AMI 1106 put the question of "whether Sonny Axsom was a licensee or an invitee" to the jury for a decision. If the question was not in issue, then 1104, possibly modified to say "If you find Sonny Axom was a business invitee . . . ," would have been appropriate. The question presented for resolution in this appeal is the duty owed by a prime contractor who is responsible for the construction premises to the employees of its subcontractor.

A case which is quite close to the present one is *Gordon* v. *Matson*, 246 Ark. 533, 439 S.W.2d 627 (1969), where the court stated:

> It appears to be the general rule that the responsibilities of the prime contractor to employees of the subcontractor on the job are comparable to the duties of the owner of the premises. This is a duty to exercise ordinary care and to warn in the event there are any unusually hazardous conditions existing which might affect the welfare of the employees.

The *Gordon* opinion also recognized that the prime contractor is responsible for injuries to the subcontractor's employees if the prime contractor has undertaken to perform certain duties or activities and has done so negligently. There is a distinct difference in the *Gordon* case and the present case in that the injury in *Gordon* was caused by a hoist which was under the exclusive control of the subcontractor, and it was conceded that the prime contractor did not exercise any supervision or control over any of the activities of the subcontractor or its employees.

We stated in *Ollar* v. *Spakes*, 269 Ark. 488, 601 S.W.2d 868 (1980), that "it is the duty of an owner or occupier of land to his business invitees to maintain a reasonably safe condition for those coming upon his premises." The *Ollar* opinion went on to extend this duty to the areas immediately adjacent to the property where

the invitee is visiting if the owner or occupier knew of dangerous conditions not known by the invitees.

A case factually similar to the present case in some respects is that of *Daniel Construction Co.* v. *Holden*, 266 Ark. 43, 585 S.W.2d 6 (1979). Holden was an employee of a subcontractor and was injured on the job site while doing something unrelated to the duties assigned to him by the subcontractor. After Holden received a jury verdict in the amount of $38,500, the prime contractor appealed to this court and obtained a reversal. Holden was not engaged in the performance of his duties at the time of his injury. He fell through a stairwell opening from one floor to another in an apartment building under construction after the close of work hours. He had gone to his private automobile, had obtained his personal clothing, and had come back inside the apartment building for the purpose of changing clothes. He stepped into an unfinished stairwell and was injured. In that case the appellant conceded that employees of the subcontractor were business invitees of the general contractor while performing their work on the job site, pursuant to the terms of the contract. This court found that Holden had crossed the boundaries of being an invitee and became instead either a licensee or a trespasser. There are no such allegations in the case before us. It is undisputed that the appellant was engaged in the performance of his duties as foreman of the subcontractor.

The Eighth Circuit Court of Appeals interpreted the Arkansas law on this subject in *Dunn* v. *Brown and Root, Inc.*, 455 F.2d 717 (8th Cir. 1970), and stated that "where the prime contractor is itself guilty of negligence causing or contributing to the injury, it cannot escape liability. . . . [I]t appears that a prime contractor may be held liable for failure to perform a duty which it has undertaken." In reaching this decision the Circuit Court of Appeals quoted from *Gordon* v. *Matson*, supra, likening the position of a prime contractor to that of any owner or occupier of land and the position of a subcontractor's employee to that of a business invitee. The heart of the ruling was that it is the duty of an owner or occupier of land to exercise ordinary care and to warn invitees in the event there are unusually dangerous conditions existing which might affect the welfare of the invitees.

In none of the cases cited is there a bright line holding

that a prime contractor is always responsible to a subcontractor's employee who is injured while performing the duties of the subcontractor. Thus, the general rule is that in the absence of statutory requirement, contractual obligation, or undertaking of another party, the prime contractor in possession of the construction premises is responsible for injuries which arise because of its negligence. The common thread running through all of the Arkansas cases that we have reviewed leads us to conclude that we must make a determination on the merits of each case and consider the specific facts before we can determine whether AMI 1104 or 1106 is mandated. The reason for the stairway being unlit is disputed as is the reason for the concrete not being poured in the shell steps of the stairway. It is not disputed that the contractor was carrying on other phases of the work during the same time the subcontractor was performing its duties.

■ AMI Civil 2d 301 does not mention the duties of a general contractor to those coming upon the premises. Therefore, we disagree with the trial court's holding that the submission of either of the proffered instructions would have been cumulative or duplicative, or that they would have added nothing to the plaintiff's case. The proffered instructions, on the other hand, speak directly to the appellee's duties to the appellant.

This court held in *Beevers v. Miller*, 242 Ark. 541, 414 S.W.2d 603 (1967), that "it is error to refuse to give a specific instruction correctly and clearly applying the law to the facts of the case, even though the law in a general way is covered by the charge given, unless it appears that prejudice has not resulted." We cannot say that prejudice did not result from the failure to give one of these instructions.

Reversed and remanded.

HICKMAN, J., not participating.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. I disagree with the majority that the appellant has demonstrated error by the trial court which requires reversal. Appellant contends that when an employee of a subcontractor is injured on the job site and sues the general contractor, the giving of AMI 1104 or 1106 is "mandatory," not by reason of the particular circumstances of

the case, but by virtue of the relationship between the parties.

There are no cases from this court, nor, so far as I can determine, from other jurisdictions which hold that an employee of a subcontractor is, ipso facto, a business visitor or invitee of the general contractor. Certainly nothing cited in the majority opinion so holds. I submit that is not the law and ought not to be. The duty owing by the general contractor depends upon the particular facts of the case, the issue being whether the general contractor has that degree of control and possession of the area where an injury occurs that it can be said there is a duty to maintain such premises in a reasonably safe condition. Thus the duty arises not simply from the relationship, but from the responsibilities undertaken.

> The general contractor *in control of a structure or premises* owes to the employees of any other contractor rightfully thereon a duty to exercise ordinary care to keep the structure or premises in a safe condition for their use. *This duty, however, is coextensive only with the general contractor's possession and control of the premises*—that is, it devolves upon him because of the control undertaken or exercised by him, rather than merely because of his position as general contractor. [My emphasis.]

13 Am. Jur. 2d *Building and Construction Contracts* § 135.

The rule is correctly stated in *Kennedy* v. *United States Construction Co.*, 545 F.2d 81 (1976):

> If a general contractor retains control over the premises where a subcontractor is working, then the general contractor owes a duty to employees of the subcontractor to use ordinary care to maintain the premises in a reasonably safe condition for the use of those employees.

The "premises" where appellant's injury occurred consisted of a metal stairway which appellant's own employer installed, consisting of steps fashioned like a rectangular dish or pan into which concrete was to be poured. Another subcontractor was to pour the concrete. The majority opinion states that it was the responsibility of the general contractor to notify the other subcontractor when to pour the concrete. I find nothing in the record as abstracted to support this assertion, but assuming it to be

correct, standing alone it would hardly override every other consideration as to who controlled the premises. We do not know whether the other subcontractor had been notified or even whether it was time for the concrete to be poured. In short, it is clear that whether the general contractor or one or more subcontractors was responsible for maintaining *these* premises was a factual issue. The trial court heard the proof in its entirety and rejected the theory that AMI 1104 or 1106 was "mandatory." Appellant has not shown that ruling to have been erroneous.

The majority seems to concede that appellant was entitled, at most, only to a modified version of AMI 1104, but impliedly puts the responsibility on the trial judge to make that alteration. However, that responsibility expressly rests on the litigant, not the trial judge. Even if it could be assumed the appellant's proof justified an instruction patterned after AMI 1104 he failed to present a proper instruction to the trial court. ARCP Rule 51; *Peoples Bank & Trust Co.* v. *Wallace*, 290 Ark. 589, 721 S.W.2d 659 (1986); *Curtis Communications* v. *Collar*, 11 Ark. App. 14, 665 S.W.2d 301 (1984). Appellant took the position that AMI 1104 was "mandatory" by reason of the relationship between the parties. That was a mistaken assumption of the law and it follows that the trial court should be affirmed.