KNIGHT *v.* FARMERS' & MERCHANTS' GIN COMPANY.

## Opinion delivered June 18, 1923.

1. NEGLIGENCE—DANGEROUS PREMISES—LIABILITY TO LICENSEE.— While the fact that plaintiff's intestate was a stockholder in a corporation operating a public gin would not debar him for recovering damages caused by the negligence of the servants of the corporation in operating the gin, she could not recover if her intestate was a mere licensee in going upon the premises where he was injured.

2. NEGLIGENCE—INJURY TO LICENSEE.—Though the manager of a public gin had invited plaintiff's intestate, who was a stockholder in the corporation which owned it, to come and inspect the gin, yet, since the corporation was not interested in his visit, he was a mere licensee and not an invitee.

3. NEGLIGENCE—DUTY TOWARD LICENSEE.—One who goes upon another's premises as a mere licensee is in the same attitude as a trespasser, so far as concerns the duty which the owner owes him for his protection; and he takes his license with its concomitant perils and the owner owes him no duty of protection except to do no act to cause his injury after his presence is discovered.

Appealed from Mississippi Circuit Court, Chickasawba District; *W. W. Bandy,* Judge; affirmed.

*J. T. Coston,* for appellant.

Appellant's intestate was an invitee on the premises of appellee and injured by its negligence, and the court erred in directing a verdict for appellee, 92 S. W. 791. The fact that deceased was a stockholder in appellee corporation did not relieve it from the duty of exercising reasonable care to prevent injury to him who was on the premises by invitation. Corporation is under control of directors. C. & M. Digest, § 1717; 37 Pac. (Kan.)

124, 167 N. W. 1048. The judgment should be reversed and the issues submitted to a jury.

*Little, Buck & Lasley,* for appellee.

Choate, although a stockholder in appellee company, was only a licensee, not an invitee. 156 Mass. 426. No duty owed to him as such. 57 Ark. 16; 48 Ark. 493; 74 N. H. 116; 14 L. R. A. 276, 31 Am. St. Rep. 520; 20 L. R. A. 714; 87 Am. Dec. 644; 32 Am. St. Rep. (W. Va.) 859; 60 N. E. (Ohio) 205; 98 Am. Dec. 317; 11 L. R. A. (La.) 720. If Choate's status be treated as analogous to a landlord's on the rented premises, he was nothing more than a mere licensee. Tiffany on Landlord & Tenant, 13. If Choate was an invitee, he should have notified appellee of his presence, and he was guilty of contributory negligence also. 69 Me. 173; 48 Vt. 127; 2 Thompson on negligence, § 988; 20 R. C. L. 70. The belt was properly laced, and, even though Choate be considered an invitee, appellee was not liable for his injury. *Ry.* v. *Dooley,* 77 Ark. 566.

McCULLOCH, C. J. This is an action to recover damages sustained by appellant's intestate, R. C. Choate, by the breaking of a belt at appellee's cotton gin, which, it is alleged, was caused by negligence of appellee's employees in failing to properly lace or brad together the ends of the belt. It is alleged in the complaint that Choate was a visitor at the gin on business in which appellee was interested, and at the invitation of the manager of appellee's business.

The answer contained a denial of the allegations of negligence with respect to the lacing or bradding together of the gin belt, and also denied that Choate was on the premises at the invitation of appellee's manager, and alleged that Choate was there voluntarily and merely as a licensee.

Choate died during the pendency of the action, appellee was appointed administratrix, and the cause was revived in her name.

At the trial of the cause, after appellant had introduced her testimony, the court peremptorily instructed the jury to return a verdict in favor of appellee. The only question presented therefore is whether or not there was evidence legally sufficient to sustain a verdict in favor of appellant.

Appellee is a domestic corporation, organized in Mississippi County for the purpose of building and operating a public cotton gin at the town of Leachville. R. C. Choate, a retired merchant and farmer, was the largest stockholder in the corporation, but he was not a director or officer of the company, and was in nowise connected with the management of its affairs.

The gin was completed and put into operation early in October, 1921, and on October 14, according to the undisputed evidence, Choate visited the gin plant and entered the engine room, without the knowledge of any one at the gin. The first one to discover his presence there was the machinist in charge, who testified that he went into the engine room and saw Mr. Choate standing there as if he were examining a pump, and that, as the belt had broken once before, he was in the act of calling out a warning to Choate when the belt broke loose from the drive-wheel and struck Choate's hand, breaking the bones in two of his fingers. The gin had been in operation three or four days, and this was Choate's first appearance at the gin, so far as the testimony in this case discloses. The belt was one which revolved around the drive-wheel, was about seventy-five feet in length, fourteen inches wide, five-ply in thickness, and made of rubber. The ends were fastened together by hooks specially prepared for that purpose. Originally the belt had been cut too short and had to be spliced by another piece fourteen or sixteen inches in length, and each end of the spliced pieces was fastened to or connected with the main part of the belt by hooks. The proof shows that the hooks were of standard make and in common use for fastening belts, though there is another method adopted

by using lace leather. The unfastening of the belt was caused by the hooks pulling out.

Appellee introduced no testimony, but its manager, Rose, and the machinist in charge, Groves, were introduced as witnesses by appellant, and the testimony of those witnesses was relied upon by appellant as making a case in her favor. Rose testified that several times during the construction of the gin Choate asked him, when they met by chance, how they were getting along at the gin plant; that he made reply to Choate that they were getting along all right, and invited Choate to come down to the plant and look it over. Rose testified that these conversations occurred several times up to about the time, or perhaps after, the gin was started into operation, but the witness was not certain that the conversations occurred after the gin was started. The statements of the witness, as they appear in the transcript, are as follows:

"Q. State whether or not you ever extended to him an invitation to come down to the premises and look the machinery over? A. I had at times. I didn't that morning. In fact, I didn't know he was in the gin that morning until he was hurt. I had invited him down at times before that. Q. Well, was that a general invitation, or an invitation to come and see certain parts of it? A. Well, I had asked him to come down and look it over."

On cross-examination the statements of the witness were as follows:

"Q. Mr. Choate was a stockholder? A. Yes sir. Q. One of the largest? A. Yes sir; he was the largest. Q. Was he a director in the company? A. No sir. Q. He had nothing to do with the running of the gin? A. No sir. Q. You say that you had invited him to come to the gin? A. Yes sir. Q. That is while you were building it? A. Yes sir. Q. How did you happen to do that? A. Well, I would be talking to him, and he would say, 'How are you getting along down

there?' and I would say, 'All right,' and he said, 'Well, I am coming down and see how you are getting along,' and I said, 'All right, come down.' Q. That would be the extent of your invitation, would it? A. Yes sir. Q. You didn't know he was there that morning? A. No sir. Q. And he had no invitation from you to be there that morning? A. No sir. Q. You had not invited him to be in there at any time while the machinery was in operation, had you? A. I had just invited him down at different times. Q. Well, did you ever invite him to come down there and stand around while the machinery was in operation? A. Well, I had just invited him down is all. * * * Q. Your invitation was just casually made to him to come down? A. I just invited him to come down and look over the proposition."

The redirect examination on this subject was as follows: "Q. You say you invited him while the gin was being erected to come down? A. Yes sir. Q. And after it was finished, tell the jury whether you then invited him to come down or not? A. Well, I couldn't say. I could not say whether it was after it was finished and we were running or not. He would meet me and ask me how we were getting along, and I would tell him all right, that we were going to start up. Q. State whether or not, after you told him that you were going to start up, you invited him down? A. Well, I invited him in that way."

Further cross-examination was as follows: "Q. You didn't invite him because of any benefit to yourself or the gin company, did you, but for his own pleasure and convenience? A. It was just out of courtesy to him. He was a stockholder in the company."

After the court had announced the ruling that a peremptory instruction in favor of appellee would be given, counsel for appellant was granted permission to introduce additional testimony, and witness Rose was again recalled and made the following statements: "Q. When did you invite him to visit the gin in relation to

the time you commenced running the gin? A. Well, I invited him at times before we started running and some time along about the time we started to running. Q. Mr. Choate owned three or four farms around there and was raising cotton on those farms? A. Yes sir. Q. State whether or not the cotton from those farms was ginned at that gin? A. It was. Q. State whether or not you invited other farmers around there who were prospective customers of the gin to come down and go through and look it over? A. Yes sir; I had a good many people coming down there. Q. You wanted to advertise the gin, didn't you? A. Yes sir."

The only legitimate inference that can be drawn from the testimony is that Mr. Choate went to the gin on his own business as a stockholder in the corporation, and not in the interest of the corporation itself. He was, according to the testimony, invited there, but the invitation was only for his own purpose and interest, and not for any purposes of the corporation.

Counsel for appellant insist that the case should have been submitted to the jury for the reason that the inference might have been drawn that the corporation was inviting farmers to the plant for advertising purposes in order to induce them to patronize the gin, but we do not think that the testimony warrants any such inference. There is no testimony whatever in the record that Choate was invited there for any such purpose. On the contrary, the undisputed testimony shows that he was invited to the gin plant upon his own inquiry for the purpose of "looking it over," as one of the stockholders interested in its construction and operation. That being true, Choate was a mere licensee while on the premises of appellee for the purpose of inspecting the plant. The fact that he was a stockholder in the corporation did not bar him from recovering damages caused by the negligence of the servants of the corporation, if he was rightfully on the premises otherwise than as a trespasser or a bare licensee. *Morbach* v. *Home*

*Mining Co.,* 53 Kas. 731, 37 Pac. 124. But if he went to the plant for the sole purpose of looking after his own investment, the corporation itself would have no such interest in the visit as would change his status from a licensee to that of an invitee. It is not always clear, under a given state of facts, as to what inference may be drawn as to a person being a licensee or an invitee, but one of the sure tests is whether or not the owner of the premises is interested in the presence of the visitor.

In the case of *Arkansas & Louisiana Ry. Co.* v. *Sain,* 90 Ark. 278, we said that one who went upon a train at a railroad station merely for the purpose of greeting passengers and without the intention to assist them in any way in embarking or debarking, was a licensee and not an invitee.

In *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Wirbel,* 104 Ark. 236, we decided that one who went upon the premises of an owner for the purpose of seeking employment, when it was customary to employ help there, was there on business of the owner so as to make him an invitee and render the owner responsible in damages for negligence in failing to properly make the premises reasonably safe.

In *Chicago, Rock Island & Pacific Ry. Co.* v. *Russell,* 136 Ark. 365, we held that, where the plaintiff went into the railroad station to meet persons who he thought were friends of his from another town, and he was injured by falling down an open and unlighted stairway, he was a mere licensee, and the railroad company was not liable on account of failure to safely maintain the premises.

In *Alfrey Heading Co.* v. *Nichols,* 139 Ark. 462, where a person had bought firewood at a manufacturing plant and went there for the purpose of hauling it away, and was injured by negligence in the maintenance of the premises, we held that the owner of the plant had such an interest in the presence of the visitor as to make the transaction one in which the visitor was an invitee rather

than a licensee, and that the owner was responsible for damages.

According to these tests, there is no escape from the conclusion that, if Mr. Choate went to the premises merely as a stockholder for the purpose of looking over the subject-matter of his investment, he was a mere licensee, and we think that this state of facts is shown by the undisputed evidence. In all of our decisions on the subject—and there are many—we have adhered to the rule that one who goes upon the premises of another as a mere licensee is in the same attitude as a trespasser so far as concerns the duty which the owner owes him for his protection; that he takes his license with its concomitant perils, and that the owner owes him no duty of protection except to do no act to cause his injury after his presence there is discovered. *St. L., I. M. & S. Ry. Co.* v. *Tomlinson,* 69 Ark. 489; *Ark. & La. Ry. Co.* v. *Sain, supra; C. R. I. & P. Ry. Co.* v. *Payne,* 103 Ark. 227; *St. L., I. M. & S. Ry. Co.* v. *Pyles,* 114 Ark. 218; *Alfrey Heading Co.* v. *Nichols, supra; C. R. I. & P. Ry. Co.* v. *Russell, supra; Mitchell* v. *Ozan-Graysonia Lumber Co.,* 151 Ark. 6.

It is unnecessary to discuss any question of negligence of appellee in fastening the belt together, for, since it is found that appellant's intestate was there as a licensee, and that no affirmative act of negligence was committed after he went upon the premises, there is no liability.

The court was therefore correct in directing the verdict, and the judgment is affirmed.