CATO *v.* ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.

4-3669

Opinion delivered January 28, 1935.

232

*J. F. Holtzendorff, R. Leon Day* and *Tom W. Campbell,* for appellants.

*N. F. Lamb,* for appellee.

McHANEY, J. Appellants are the widow and heirs at law of P. J. Cato, deceased. They brought this action against appellee to recover damages for his death, caused by the running of a train. At the conclusion of the evidence for appellants, the court instructed a verdict for appellee and entered judgment accordingly.

The facts, briefly stated, are as follows: Mr. Cato was a police officer in the city of Stuttgart, sixty-one years of age and weighed over two hundred pounds. His son last saw him at Pond's Cafe about 7:30 P. M., November 15, 1933, when he left the cafe and started walking north on Main Street, towards the railroad tracks, about two and one-half blocks away. He was found dead under a car of a freight train of appellee a few minutes later, with both feet cut off. This train had just pulled in from Gillette and DeWitt, stations on a branch line of appellee out of Stuttgart and was standing over the Main Street crossing and over the Second Street crossing to the west. Mr. Cato attempted to pass under this train or between the cars thereof at a point between Main and Second Streets, and, while so doing, the train was started, and he was killed. No one saw him go under the train or between the cars, and it is not shown that any of the trainmen or any one else knew or had any reason to believe that he had done so. Maple Street is parallel to Main Street and is the first street west of Main, but it does not cross the tracks. There is an alley between Main and Maple from which on the south a path leads up to the tracks, and Mr. Cato and others had crossed the tracks at this point for a number of years to get to the north side of town. He was run over at about this point, but his body

was dragged some eighty feet west or southwest by the train. Appellants contend that the public use of this footpath for a long time makes of it a public highway and gives to the public the right to travel over it the same as if it were a public street, such right having been acquired by prescription; that appellants' intestate and appellee both had the right to travel over this crossing (where the footpath is) and that each must respect the rights of the other in so doing. It was testified by two witnesses who were blocked at the Main Street crossing that, when the train started up to clear the crossing, the bell was not rung or the whistle blown, and it is argued that a question was made for the jury, whether in starting the train without giving any signal, the trainmen failed to use ordinary care for the safety of deceased.

We cannot agree with this argument. Conceding that the footpath was there as contended, and that a number of people, including Mr. Cato, for a long time had crossed the tracks at this point, and that they had acquired a license so to do, still we cannot agree that Mr. Cato had acquired a license to crawl under or between the cars of a live train. He was bound to know that this train had just arrived, and that it was then blocking Main Street, the principal thoroughfare of the city, and that it would not be permitted to do so except for a few minutes. The slightest exercise of care on his part would have warned him of the danger of attempting to cross under this train as it had an engine attached to it. Whether he be called a trespasser or licensee, the same rule of law applies, and that is that the only duty owing to him was not to wilfully or wantonly injure him and to exercise ordinary care under the circumstances to avoid injury to him after discovering his peril. *Ark. Short Line* v. *Bellars*, 176 Ark. 53, 2 S. W. (2d) 683. Here there is no proof that Mr. Cato was wilfully or wantonly killed, or that his peril was discovered, or that any of the trainmen had any reason to suspect his presence.

Again, if it be conceded that appellee was negligent in starting the train without giving any signal, still appellants cannot recover, for, under similar circumstances,

we have held that the contributory negligence of the person injured could not have been less than the railroad's negligence, and therefore he was not entitled to recover. *St. L. S. F. R. Co.* v. *McClinton*, 178 Ark. 73, 9 S. W. (2d) 1060.

Under any view of the evidence, considered in the light most favorable to appellants, and indulging all reasonable inferences to be drawn therefrom, no recovery could be sustained. The trial court therefore correctly instructed a verdict for appellee.

Affirmed.