WALKER *v.* MISSOURI PACIFIC RAILROAD COMPANY,
THOMPSON, TRUSTEE.

4-8171 201 S. W. 2d 768

Opinion delivered May 5, 1947.

*Hays, Wait & Williams,* for appellant.

*Thos. B. Pryor* and *Brady Pryor,* for appellee.

McHANEY, Justice. This appeal is from a judgment entered on an instructed verdict for appellee at the conclusion of appellant's evidence.

Appellant brought the action to recover damages for the alleged wrongful and negligent death of her 13-year-

old daughter, Elizabeth, who was struck by a fast passenger train in Atkins, Arkansas, about 11:30 a. m. on May 18, 1946, and who was instantly killed. The negligence alleged and relied on here related, first, to the speed of the train; second, failure to give the statutory signals; third, failure of the operatives to keep a lookout; and fourth, failure to apply the brakes. The insistence here is that the proof on the part of appellant made a case for the jury, and that the court, therefore, erred in directing a verdict for appellee.

On the day of the accident a street carnival was being held in Atkins, on the south side of the railroad tracks, partly on the right of way and partly in the street. The tracks run east and west through Atkins. The deceased and another girl, both colored, wanted to cross from the south side of the tracks to the north side. At that time a freight train was slowly running east on the passing or side track. Both of the girls approached the track about opposite the depot which is located on the north side, about the center of a block between two public crossings. They waited for the freight to pass, and, when the caboose thereof went by, they ran from behind it and directly in front of a fast passenger train going west. The other girl narrowly escaped, but Elizabeth was killed. The distance · between the main line and the switch tracks was 9 or 10 feet. There is no dispute in the evidence as to how the accident happened. Pardie Parker, son-in-law of and witness for appellant, testified that he saw the accident, saw the girls run from behind the freight train and on to the main track, immediately in front of the engine of the passenger train, and saw the engine strike the deceased; that he halloed to them in an attempt to keep them from running across in front of the passenger train, the front of which was close to the back end of the caboose of the freight; that they leaped across the track and one of them got killed; and that there was no crossing at that place.

■ As to the speed of the passenger train, it was alleged that it was traveling at about 70 miles per hour and the proof tended to establish this speed, much in

excess of the speed limit for trains fixed in an ordinance of the city introduced in evidence. We think it was not established that the speed of the train was the proximate cause of the accident, and that the little girl would have been killed had the train been running much slower. It is undisputed that she darted out from behind the caboose of the freight immediately in front of the engine of the passenger train, not at a crossing, not at a point where even a foot path led across the tracks, but where she was either a trespasser or a bare licensee, to whom the Company owed no duty except not to willfully or wantonly injure her and to exercise ordinary care under the circumstances to avoid injuring her after the discovery of her peril. *Cato* v. *St. L. S. W. Ry. Co.*, 190 Ark. 231, 79 S. W. 2d 62; *C. R. I. & P. Ry. Co.* v. *Caple, Admr.*, 207 Ark. 52, 179 S. W. 2d 151.

■ As to the failure to give the statutory signals, several of the witnesses for appellant testified that the whistle was sounded and others testified negatively that they did not hear it. We think the failure to sound the whistle or ring the bell, if there were such failure, is unimportant under the circumstances here presented. The freight train was running, the noise of which as well as the noise from the passenger train, may have drowned out to the girls the noise of the whistle. In any event the noise of the oncoming passenger train must have been much greater than that of the slowly moving freight and could have been heard had the slightest attention been given to it, or if the girls had glanced to their right they could and would have seen the train which was practically on them when they darted across the track in front of it. Under these circumstances signals cease to be factors since the danger was apparent from the noise of the train and its nearness. *St. L. & S. F. Ry. Co.* v. *Ferrell*, 84 Ark. 270, 105 S. W. 263; *Mo. Pac. Rd. Co.* v. *King*, 200 Ark. 1066, 143 S. W. 2d 55. Moreover, being trespassers or licensees appellee owed them no duty to give the statutory signals under the cases cited in paragraph 1, above.

638

 As to the alleged failure to keep a lookout and to apply the brakes, it is undisputed that the deceased could not have been seen by the operatives in time to avoid striking her had a lookout been kept or in time to apply the brakes and check the train sufficient to permit her to escape. Moreover, she was a trespasser or a licensee under the rule stated in the Cato and Caple cases, above cited, and many others, to whom appellee owed no affirmative duty of care, and only the duty not to willfully or wantonly injure her after the discovery of her peril. In *St. L.-S. F. Ry. Co.* v. *Williams*, 180 Ark. 413, 21 S. W. 2d 611, it was held that it is the duty of one complaining of personal injuries, caused by the running of a train, to show that the injuries were received at such a place or under such circumstances that her presence would have been discovered had a lookout been kept. Here there was no attempt to show such facts. On the contrary, the proof shows that her presence could not have been discovered in time to avoid striking her.

The judgment is, accordingly, affirmed.