Josh L. BALDWIN, A Minor, by His Father and Next Friend Jerry Baldwin v. Curt MOSLEY

88-13                                                    748 S.W.2d 146

Supreme Court of Arkansas
Opinion delivered April 25, 1988

*Hickam & Williams, P.A.*, by: *D. Scott Hickam*; and *Lane, Muse, Arman & Pullen*, by: *R. Keith Arman*, for appellant.

*Wright, Lindsey & Jennings*, for appellee.

TOM GLAZE, Justice. This is a tort case in which this court is asked again to reject its adherence to the common-law distinction between a licensee and an invitee. Appellant, Josh Baldwin, was eleven years old and was undisputedly a licensee at the time of his injury. The trial court granted appellee's (Curt Mosley's) motion for summary judgment, finding (1) that the facts failed to show Mosley violated any duty owed to Josh as a licensee and (2) that, in any event, Josh's accident and injury occurred when he was in the presence of his mother and her presence negated any duty Mosley may have owed Josh. We hold the trial court was correct in granting the summary judgment and in applying the common law rule applicable to licensees. Therefore, we affirm.

In addressing the arguments advanced in Josh's behalf, we first recount the common-law rules to which Arkansas's courts have adhered when considering a dispute between a property owner and licensee. In *Webb* v. *Pearson*, 244 Ark. 109, 424 S.W.2d 145 (1968), this court said, quoting from *Knight* v. *Farmers' & Merchants Gin Co.*, 159 Ark. 423, 252 S.W. 30 (1923):

> In all of our decisions on the subject—and there are many—we have adhered to the rule that one who goes upon the premises of another as a mere licensee is in the same attitude as a trespasser so far as concerns the duty which the owner owes him for his protection; that he takes the license with its concomitant perils, and that *the owner owes*

*him no duty of protection except to do no act to cause him injury after his presence there is discovered.* (Emphasis added.)

■ The *Webb* court further recited the following, more explicit rule on the subject, as it was set out in *Cato v. St. Louis Southwestern Ry. Co.*, 190 Ark. 231, 79 S.W. 62 (1935):

Whether he be called a trespasser or licensee, the same rule of law applies, and that is that *the only duty owing him was not to willfully or wantonly injure him and to exercise ordinary care under the circumstances to avoid injury to him after discovering his peril.* (Emphasis added.)

■ Having reviewed the applicable rules that define the duties owed a licensee by a landowner, we now review the evidence in the case at hand in the light most favorable to Josh in order to determine whether the trial court correctly decided Mosley was entitled to a judgment as a matter of law. *See Township Builders, Inc. v. Kraus Constr. Co.*, 286 Ark. 487, 696 S.W.2d 308 (1985). In examining the record, we have no doubt that the trial judge's decision, granting Mosley a summary judgment, was a correct one.

The uncontested facts reflect that, at the time of his injury, Josh was visiting his mother, who then was living with Mosley. Josh was sitting on a bar stool eating breakfast when the telephone rang; in answering the telephone, he stood on a rung of the stool and the rung broke, causing him to strike his head against the wall. Josh's injury later required surgery, but since the surgery, he has experienced no problems. Josh's mother owned the bar stool, which she previously had received in a divorce from Josh's father. The father, having prior knowledge that the screws, attaching the rungs, would sometimes come loose from the stool, had admonished Josh "not to stand on those rungs." Josh's mother testified that Mr. Mosley, prior to Josh's fall, had repaired the stool which was the one from which Josh had fallen; she stated, however, that "the spokes (on the stool) had never come loose from the center pole before." Also, of primary significance, the record shows that Josh's mother, and not Mosley, was present when Josh fell.

The foregoing facts offer not the slightest hint or inference

that Mosley willfully or wantonly injured Josh; and since he was not present when Josh stood on the stool, Mosley was obviously in no position to discover Josh's peril so as to act to protect Josh against any potential injury.

In fact, as the record reveals, Josh was under his mother's control when he fell. Thus, *if* anyone other than Josh were negligent under the circumstances described here, that person was Josh's mother because of her failure to properly supervise her son. The trial court reached such conclusion in its alternative reason for dismissing Josh's complaint. In support of that alternative holding, we note the following rule in *Laser* v. *Wilson*, 58 Md. App. 434, 473 A.2d 523 (1984):

> *[I]f a condition is open and obvious rather than latent or obscure, no greater duty is imposed upon a host of a child under parental supervision than would be owed to the parent. If the parent has either been warned, or if the condition is or should be obvious to the parent, the parents' failure properly to supervise its child is the proximate cause of a subsequent injury.* The host is not negligent because he has performed his duty of having the premises as safe for his guest as for his family and himself. (Emphasis added.)

*See also Freeze* v. *Congleton*, 276 N.C. 178, 171 S.E.2d 424 (1970); *cf. Pittsburg Reduction Co.* v. *Horton*, 87 Ark. 576, 113 S.W. 647 (1908) (court held that where a mother's permission was given to her child to take dynamite caps to school where the child gave the caps to the plaintiff, the mother's actions broke the causal connection between the defendant's negligence—in leaving the caps where the child could find them—and the plaintiff's later injury that resulted from the caps). In sum, we conclude that the trial court's decision granting Mosley summary judgment can, and must, be sustained under either of the two theories given by the court when dismissing this cause.

■ Concerning the appellant's argument that this court should eliminate the long-settled distinction between a licensee and invitee, we rejected that same suggestion in *Coleman* v. *United Fence Co.*, 282 Ark. 344, 668 S.W.2d 536 (1984). Although a number of jurisdictions during the 1970's indicated a willingness to discard the legal distinctions between licensees and

invitees, that abolition movement has since lost its steam. *See* W. Prosser and W. Keeton, *The Law of Torts* § 62 (5th ed. 1984). From our research, our decision in *Coleman* to follow such common-law distinctions is clearly the prevailing view in our sister states, *see* Annot., *Landowner Liability—Injured Party Status*, 22 ALR 4th 294 (1983), and, in fact, since 1982, the great majority of decisions have continued to apply the conventional entrant classification rules. W. Prosser & W. Keeton, *The Law of Torts* § 62 (5th ed. Supp. 1988). We are presented no compelling reason why we should depart from our holding in *Coleman* to continue to follow the common-law distinctions as determinative of landowner liability.

We affirm.

PURTLE and HAYS, JJ., concur.

STEELE HAYS, Justice, concurring. While I concur in the result reached, I do not agree with the majority as to the substantive law applicable to licensees. The majority opinion fosters a misconception that the only duty owed to a licensee, as to a discovered trespasser, is a duty to refrain from injuring the licensee by willful or wanton conduct. That same misconception is implicit in the majority opinion in *Coleman* v. *United Fence Company*, 282 Ark. 344, 668 S.W.2d 536 (1984). The majority opinion quotes language from *Cato* v. *St. Louis Southwestern Ry. Co.*, 190 Ark. 231, 79 S.W.2d 62 (1935):

> Whether he be called a trespasser or licensee, the same rule of law applies, and that is that *the only duty owing him was not to willfully or wantonly injure him and to exercise ordinary care under the circumstances to avoid injury to him after discovering his peril.* [Emphasis added].

That declaration of the law omits an important distinction between the duty owed to licensees as opposed to trespassers. Licensees and trespassers alike are generally considered to take the premises as they find them, although the owner may not affirmatively create a risk of harm to either, once he is aware of their presence. As to licensees, an owner owes no corresponding duty, as in the case of invitees, to render the premises safe, nor any duty to warn them of dangers which should be obvious. But if the owner is aware of a danger on the premises which is latent, or one

the licensee might not be expected to recognize, the owner is under a duty to warn him. Prosser and Keeton on Torts, 5th Ed., §. 60; *Restatement of Torts, Second*, § 342. An Annotation in 26 A.L.R.3d 317 summarizes this rule:

> [B]ut that where there is a known dangerous condition on the premises and the occupier can reasonably anticipate that his licensee will not discover or realize the danger, the occupier may be held liable for bodily harm caused to the licensee by the condition if he invites or permits the licensee to enter or remain upon the premises without exercising reasonable care either to give warning of the condition and the risk involved, or to make the condition reasonably safe, and the licensee does not know or have reason to know of the condition or risk involved.

An Annotation appearing at 55 A.L.R.2d 52, § 2, recognizes an ambiguity in the law:

> While in a number of cases general language may be found which seems to restrict a licensor's duty to a licensee to that of refraining from wilful or wanton misconduct, or, at most, active negligence, the cases which have explicitly considered the question have frequently recognized that a licensor-landowner may be under an obligation of exercising reasonable care to warn licensees of hidden dangers known to the licensor.

The citations which follow include cases from twenty-five American jurisdictions. Cases to the contrary are almost nonexistent. This is said to be the law "in most jurisdictions." Harper, James & Gray, *The Law of Torts*, 2d Ed., § 27.9.

Here there was evidence the appellee was aware of a defect in these stools, and therefore some basis exists for a dispute of fact as to a duty to warn. Were it not for the fact that this child was under the immediate supervision of his mother, who was also aware of the problem, it would be difficult to affirm a directed verdict.

PURTLE, J., joins.