Birttie KING *v.* Jerry JACKSON et ux

90-100                                           790 S.W.2d 904

Supreme Court of Arkansas
Opinion delivered June 25, 1990

*Easley & Hicky*, by: *R. Alan Cline*, for appellant.

*Butler, Hicky & Long*, by: *Fletcher Long, Jr.*, for appellant.

DALE PRICE, Justice. This is an appeal from an order granting summary judgment in favor of the appellees. We affirm.

The facts are that the appellant was interested in buying some land located behind the appellees' home. Thinking that the appellees owned the land, she visited their home one evening after dark. She was invited in and inquired about the land. The appellees informed appellant that they did not own the land in

question, and at that point, the appellant proceeded to leave the house. As she stepped through the doorway onto the front porch, she stumbled over some shoes, then tripped over some cane poles and fell, sustaining a back injury.

Some months later, the appellant sued the appellees, claiming she was an invitee on the land, and the appellees failed to use ordinary care in keeping their porch and doorway free from obstructions. In the alternative, she alleged that, even if she were a mere licensee, the appellees still owed a duty of ordinary care because they knew, or should have known, the appellant was in a position of danger.

The appellees filed a motion for summary judgment which was granted. The court found that the appellees owed the appellant only a duty not to cause her injury through willful or wanton conduct, and no such conduct occurred here. The court further determined that there was no support for the appellant's claim that the appellees knew or should have known appellant was in a position of danger.

When summary judgment is requested, the moving party has the burden of proving there are no genuine issues of fact remaining. *Smith* v. *Gray*, 300 Ark. 401, 779 S.W.2d 173 (1989). On appeal, the evidence is viewed most favorably to the party resisting the motion, all doubts and inferences being resolved against the moving party. *Rickenbacker* v. *Wal-Mart Stores, Inc.*, 302 Ark. 119, 788 S.W.2d 474 (1990).

AMI 1106 defines the difference between a licensee and an invitee. *Coleman* v. *United Fence Co.*, 282 Ark. 344, 668 S.W.2d 536 (1983), also defines the terms in simple language. It is clear the appellant was a licensee, not an invitee. She was not invited onto the premises in the literal sense, nor did her visit bring any benefit to the appellees. Appellant, having gone onto the land for her own purposes, fits the definition of a licensee.

The next question posed is what duty was owed appellant by the appellees? Generally, a landowner owes no duty to a licensee other than to refrain from injuring her through willful or wanton conduct. *Baldwin* v. *Moseley*, 295 Ark. 285, 748 S.W.2d 146 (1988). It is not claimed the appellees engaged in willful or wanton conduct. However, the appellant does argue that if a

landowner discovers a licensee is in peril, he has a duty of ordinary care to avoid injury to the licensee. *Baldwin* v. *Moseley, supra*; AMI 1106(B). This duty takes the form of warning a licensee of hidden dangers if the licensee does not know or have reason to know of conditions or risks involved. *See* W. Keeton, *Prosser and Keeton on Torts* § 60, at 417 (5th ed. 1984).

■ The dangers in this case did not involve risks that the appellant might not have been expected to recognize. She admitted that, prior to entering the house, she saw the shoes on the porch. The danger presented by the shoes cannot be said to have been hidden. Therefore, there is no fact question on whether the appellees had a duty to warn her about the obstructions on the porch.

Affirmed.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. In granting summary judgment the trial court held, first, that the plaintiff, Mrs. King, was a licensee as a matter of law and, second, that under no conceivable set of circumstances could a jury find that the defendant, Jerry Jackson, breached a duty owed to Mrs. King. It is with the latter holding that I take exception.

The trial court declared that the *only* duty owed to a licensee by a licensor is "a duty not to cause his or her injury by willful or wanton conduct. . . ." (Order of Summary Judgment, p. 103). That assertion is, I submit, incomplete and thus inaccurate. *Baldwin* v. *Mosley*, 295 Ark. 285, 748 S.W.2d 146 (1988); *Webb* v. *Pearson*, 244 Ark. 109, 424 S.W.2d 145 (1968); *Knight* v. *Farmers & Merchants Gin Co.*, 159 Ark. 423, 252 S.W. 30 (1923) and *Cato* v. *St. Louis Southwestern Ry. Co.*, 190 Ark. 231, 79 S.W.2d 62 (1935).

An owner owes no duty to licensees (as opposed to invitees or business visitors) to render the premises safe, nor any duty to warn them of dangers which should be obvious. But if the owner is aware of a danger on the premises which is latent, or one the licensee might not be expected to recognize or appreciate, the owner is under a duty to warn the licensee. W. Prosser & W. Keeton, *The Law of Torts* § 60, at 412 (5th ed. 1984); Restatement (Second) of Torts § 342 (1965). An annotation entitled

*Child Licensee—Duty to Warn*, 26 A.L.R.3d 317 (1969), while dealing primarily with children, summarizes the rule with respect to licensees in general as follows:

> [B]ut that where there is a known dangerous condition on the premises and the occupier can reasonably anticipate that his licensee will not discover or realize the danger, the occupier may be held liable for bodily harm caused to the licensee by the condition if he invites or permits the licensee to enter or remain upon the premises without exercising reasonable care either to give warning of the condition and the risk involved, or to make the condition reasonably safe, and the licensee does not know or have reason to know of the condition or risk involved.

The fallacy of stating merely that a licensor owes a licensee a duty not to cause the licensee's injury by willful or wanton conduct is discussed in Annotation, *Danger to Licensee—Warning*, 55 A.L.R.2d 525, § 2 (1957):

> While in a number of cases general language may be found which seems to restrict a licensor's duty to a licensee to that of refraining from wilful or wanton misconduct, or, at most, active negligence, the cases which have explicitly considered the question have frequently recognized that a licensor-landowner may be under an obligation of exercising reasonable care to warn licensees of hidden dangers known to the licensor.

The annotation cites cases from twenty-five American jurisdictions and the foregoing rule is said to be the law "in most jurisdictions." F. Harper, F. James & O. Gray, *The Law of Torts*, § 27.9 (2nd ed. 1986).

The proof which Mrs. King was prepared to present at trial was that it was a rule at the Jackson home that no one wore their shoes in the house, for the sake of the carpet, and thus there were an indeterminate number of shoes on the porch of this trailer home. Moreover, the Jackson children had been making twelve inch "nun-chucks" from bamboo poles and some of these were on the porch. Mrs. King was prepared to testify that on her arrival at about 8:00 p.m. on that stormy evening she noticed a pair of shoes, but nothing else. Upon leaving the trailer in the dark a few

minutes later the wind blew the door as she opened it and as she tried to hold it she tripped over some shoes, sought to regain her balance, stepped on a bamboo pole on the first step below the porch and fell down the remaining steps. Mr. Jackson knew the shoes, including his own, and the "nun-chucks" were on the porch and yet he neither turned on the porch light, nor advised Mrs. King to be careful as she stepped onto the unlit porch. Mr. Jackson would have testified, according to his deposition, that he had forgotten the shoes and poles were on the porch and probably should have turned on the porch light. Moreover, as I read Mr. Jackson's testimony, taken in the light most favorable to Mrs. King, it is clearly inferable that he admitted he was at fault:

> Q. Okay. Now, Mr. Jackson, my client has told me, in a conversation before, that you admitted to her that this was your fault.
> A. Yeah, I told her —
> Q. (Interposing) Did you do that? Did you make that admission to her?
> A. Well, yeah, on account of, I mean, I own the land, and I shouldn't — I guess I should have made a policy to put the shoes over to a different place, but I just didn't do it. I mean, just like an old dog; you train him to do that, and he's going to go to the same old place all the time, and that's the way I did, and I've been guilty, too, of putting my own shoes there, and I'm trying to stop all that now.

Had Mrs. King's fall occurred when she arrived I could agree no possible liability existed, as her visit was not expected. But, once Mrs. King arrived, Mr. Jackson was fully aware of her presence and whether he should have warned her about the objects lying on a darkened porch is, I believe, an issue over which reasonable minds could differ, and that produces a question for the jury. I respectfully disagree that the case should be affirmed.