ALUMINUM COMPANY OF AMERICA *v.* Brad J. GUTHRIE

89-209                                    793 S.W.2d 785

Supreme Court of Arkansas
Opinion delivered July 16, 1990
[Rehearing denied September 10, 1990.*]

*Rose Law Firm, A Professional Association,* by: *Phillip Carroll,* for appellant.

*Boswell, Tucker & Brewster,* by: *Ted Boswell,* for appellee.

*Hays and Glaze, JJ., would grant rehearing. Price, J., not participating.

W. FRANK MORLEDGE, Special Justice. This is a personal injury case and a companion case to *Guthrie v. Kemp*, 303 Ark. 74, 793 S.W.2d 782 (1990). (Guthrie appealed summary judgment granted in favor of Kemp.)

The appellee, Brad Guthrie, filed suit against the appellant, Aluminum Company of America (Alcoa), for damages for injuries he claims were caused when he fell from a bridge owned by Alcoa. The jury awarded him $450,000. On appeal, that verdict was reversed and remanded to the trial court. *Aluminum Co. of America v. Guthrie*, 296 Ark. 269, 753 S.W.2d 538 (1988).

On July 18, 1988, the same day this court delivered its opinion in *Aluminum Co. of America v. Guthrie, supra*, Guthrie filed suit against Kemp, who, on July 21, 1985, the date of Guthrie's injuries, was Alcoa's chief of security. Subsequently, the trial court consolidated that case, upon Guthrie's request, with *Aluminum Co. of America v. Guthrie, supra*.

The trial court granted summary judgment in favor of Kemp on December 30, 1988. The retrial of *Aluminum Co. of America v. Guthrie, supra*, was held January 3, through January 6, 1989. The jury awarded Guthrie $1.1 million.

From that verdict, Alcoa appeals and alleges five points of error: (1) the trial court erred in denying Alcoa's motion for a directed verdict; (2) the trial court erred in giving the second bracketed portions of Paragraph B, AMI 1106; (3) the trial court abused its discretion in allowing the testimony of a retired economist to be read; (4) the trial court committed prejudicial error in failing to modify the comparative fault instruction to reflect the essential prerequisites to applying the instruction; and (5) the verdict was excessive.

We find merit in Alcoa's first point of error and reverse and dismiss.

The case turns on Guthrie's status as a trespasser, licensee, or invitee upon Alcoa's property. Guthrie argues that he was an implied invitee on Alcoa's bridge. We disagree.

Guthrie testified that he had no recall of the manner in which he was injured or the events of the day prior to his injury. His case was presented to the jury on the theory that he had left an area

called Lost Lake, to which he had gone with friends for a moonlight swim, and was walking to his ex-girlfriend's house some two and a half miles away. There was evidence that a route across Alcoa's bridge would have been a shortcut between the two points. It was surmised that Guthrie was injured when he fell through an opening left by the removal of grates from the bridge. The bridge, or overpass, was apparently constructed by the B&N Railroad to carry its track. After B&N vacated the bridge, it was used by Alcoa to support a water line. There was testimony that children and adults had been seen on the bridge during daylight hours, and, on one occasion, at night when police were summoned to remove children reported to be dropping rocks on cars passing below. Another witness for Guthrie testified that it was "not uncommon" to see people on the bridge. We consider this proof in the light most favorable to the appellee.

Nonetheless, while we have recognized that an invitation may be extended by implication, the proof in this case falls short of that required to establish such status. In each of the cases recognizing implied invitee status, we have required some affirmative act on the part of the landowner which induces another to enter the premises. In *Missouri Pacific R.R. Co.* v. *English*, 187 Ark. 557, 61 S.W.2d 455 (1933), we held that the construction and continued maintenance by the defendant of a foot bridge for the use of the public was an implied invitation. In *St. Louis Iron Mountain & Southern Ry. Co.* v. *Dooley*, 77 Ark. 561, 92 S.W. 789 (1906), the construction by the railroad of steps for use by the general public was held sufficient. In *Aluminum Company of America* v. *Walden*, 230 Ark. 337, 322 S.W.2d 696 (1959), the construction of a private road which appeared to be a continuation of the public road was held sufficient. *Vickers* v. *Gifford-Hill & Co., Inc.*, 534 F.2d 1311 (8th Cir. 1976), cited by Guthrie, held that the opening of a gate across a private way used by the public constituted an implied invitation.

In this case, there is no evidence of any affirmative action by Alcoa which rises to the level of an implied invitation. We find a real and substantial distinction between injury on a facility constructed or maintained for the purpose of use by the public or the act of literally opening a gate, and the facts of this case which, under their highest construction, could constitute only acquiescence on the part of Alcoa. As we have previously

stated, mere acquiescence by the landowner is insufficient. *Chicago, Rock Island & Pacific Ry. Co.* v. *Harrison*, 204 Ark. 361, 162 S.W.2d 62 (1942); *Chicago, Rock Island & Pacific Ry. Co.* v. *Payne*, 103 Ark. 226, 146 S.W. 487 (1912).

■ Neither is the proof sufficient to allow recovery to Guthrie as a trespasser or licensee whose presence and position of danger should reasonably have been known by Alcoa. In *Baldwin* v. *Mosley*, 295 Ark. 285, 748 S.W.2d 146 (1988), we stated our long standing position:

> In *Webb* v. *Pearson*, 244 Ark. 109, 424 S.W.2d 145 (1968), this court said, quoting from *Knight* v. *Farmers' & Merchants' Gin Co.*, 159 Ark. 423, 252 S.W. 30 (1923):

> In all of our decisions on the subject — and there are many — we have adhered to the rule that one who goes upon the premises of another as a mere licensee is in the same attitude as a trespasser so far as concerns the duty which the owner owes him for his protection; that he takes the license with its concomitant perils, and that *the owner owes him no duty of protection except to do no act to cause him injury after his presence there is discovered.* (Emphasis added.)

> The *Webb* court further recited the following, more explicit rule on the subject, as it was set out in *Cato* v. *St. Louis Southwestern Ry. Co.*, 190 Ark. 231, 79 S.W. 62 (1935):

> Whether he be called a trespasser or a licensee, the same rule of law applies, and that is that *the only duty owing him was not to wilfully or wantonly injure him and to exercise ordinary care under the circumstances to avoid injury to him after discovering his peril.* (Emphasis added.)

■ There is no evidence of wilful or wanton conduct on the part of Alcoa or that Alcoa discovered or reasonably should have discovered Guthrie's peril on the night in question.

Reversed and dismissed.

HAYS and GLAZE, JJ., dissent.

PRICE, J., not participating.

STEELE HAYS, Justice, dissenting. I respectfully disagree that this case should have been disposed of by a directed verdict for the defendant. There was sufficient evidence from which a jury could have concluded that Brad Guthrie was an implied invitee. But even if that proof fell short, there was evidence from which the jury could have determined that Guthrie was a licensee.

Prosser defines licensees as those who enter another's land with nothing more than consent, e.g., those taking shortcuts across the property or making merely permissive use of crossings and ways. Such permission may be tacit and may be manifested by the defendant's conduct, or by the condition of the land itself. The owner owes no duty to make the premises safe for such persons, nor to warn them of dangers which are patent or obvious. There may, however, be a duty to warn such persons of hidden dangers known to the occupier-owner. While earlier cases frequently state there was no duty to licensees except to refrain from willful or wanton injury, the trend, however, "has been toward a gradual modification of this position." W. Prosser and W. Keeton, *The Law of Torts* § 60, at 412 (5th ed. 1984).

The Restatement (Second) of Torts § 342 (1965), adopts a more contemporaneous view:

Dangerous Conditions Known to Possessor.

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.

In a dissenting opinion to *King* v. *Jackson*, 302 Ark. 540, 790 S.W.2d 904 (1990), I cited language from Annotation, *Danger to Licensee — Warning*, 55 A.L.R.2d 525, § 2 (1957):

While in a number of cases general language may be found which seems to restrict a licensor's duty to a licensee to that of refraining from wilful or wanton misconduct, or, at most, active negligence, the cases which have explicitly considered the question have frequently recognized that a licensor-landowner may be under an obligation of exercising reasonable care to warn licensees of hidden dangers known to the licensor.

That is said to be the law in most jurisdictions, F. Harper, F. James and O. Gray, *The Law of Torts*, § 27.9 (2d Ed. 1986) and is in accord with the general rule as stated in some of our cases: *Baldwin* v. *Mosley*, 295 Ark. 285, 748 S.W.2d 146 (1988); *Webb* v. *Pearson*, 244 Ark. 109, 424 S.W.2d 145 (1968); *Cato* v. *St. Louis Southwestern Ry. Co.*, 190 Ark. 231, 79 S.W.2d 62 (1935). Others (cited in the majority opinion) give a different emphasis in stating the general rule and it strikes me that our cases reflect some uncertainty, although AMI 1103 and 1106 recognize that circumstances may impose a duty of ordinary care to avoid injury to a licensee.

There was ample testimony in this case from which it could be inferred that Alcoa knew or should have known that the public generally was using its bridge as a passageway across the highway, as an elevated platform from which to watch ballgames played on an adjacent field, on which to paint graffiti and as a place from which to drop objects on motorists passing below. In short, public access and usage of the bridge for various purposes over a period of time were clearly established. Coupled with that was evidence that Alcoa knew, or should have known, that a latent, hazardous condition existed which might not be readily apparent—a missing piece of grating. Photographs, as well as testimony, demonstrate that the absence of the grating from the crosswalk on the bridge constituted a hazard which might easily go unnoticed, particularly at night.

When those facts are viewed in their strongest light, reasonable minds could readily differ as to whether Alcoa should have known of the danger and given warning or removed the hazard. That being so, it was not error to deny the motion for a directed verdict.